**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Barry LEWIS, Defendant-Appellee.**

**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Christopher BOWMAN, Defendant-Appellee.**

Nos. 82SA273, 82SA274.

Supreme Court of Colorado, En Banc.

April 9, 1984.

Dennis E. Faulk, Dist. Atty., Canon City, William P. Alderton, Deputy Dist. Atty., Salida, Steven Rich, Deputy Dist. Atty., Fairplay, for plaintiff-appellant.

David Vela, Colo. State Public Defender, James England, Deputy Public Defender, Denver, for defendant-appellee Lewis.

L. Richard Musat, Hall & Evans, Denver, for defendant-appellee Bowman.

DUBOFSKY, Justice.

In these consolidated appeals, the People challenge district court orders dismissing charges filed against the defendants, Christopher Bowman and Barry Lewis.[1] The district court based the dismissals on its holding that the state violated the defendants' rights to prompt notification of untried charges against them under the Uniform Mandatory Disposition of Detainers Act, sections 16–14–101 to –108, C.R.S. We reverse the district court's orders and remand the cases for further proceedings.

On October 21, 1981, the defendants escaped from the Colorado State Reformatory at Buena Vista. Police officers arrested the defendants the same day and returned them to the reformatory. On November 12, 1981, the People filed by information one count of escape[2] against both Bowman and Lewis and two habitual criminal counts

---

1. The district court ruled separately on the defendants' motions, incorporating by reference its ruling on Bowman's motion into its order dismissing the charges against Lewis.

2. Section 18–8–208(1), (2), C.R.S.

against Lewis.[3] The district court found that state officials did not inform the defendants of the charges pending against them until January 26, 1982, when the defendants were brought before the district court for arraignment. The defendants moved to dismiss the charges, asserting that the failure of prison officials to notify them of the charges against them for 76 days after those charges were filed violated their rights to prompt notification under section 16–14–102(2).[4]

The Uniform Mandatory Disposition of Detainers Act (the Uniform Act) is one of several Colorado statutes implementing a defendant's right to a speedy trial, as provided in Article II, section 16 of the Colorado Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. *People v. Bean*, 650 P.2d 565 (Colo.1982); *People v. Swazo*, 199 Colo. 486, 610 P.2d 1072 (1980). The Uniform Act gives any person in the custody of the Department of Corrections the right to request final disposition of any untried indictments, informations, and criminal complaints (charges) pending against him in Colorado. Section 16–14–102(1), C.R.S. The superintendent of the institution where the prisoner is confined must inform the prisoner promptly of any untried charges of which the superintendent has knowledge, and of the prisoner's right to request final disposition of those charges. Section

16–14–102(2), C.R.S. The superintendent is required to transmit any request made by a prisoner for final disposition of untried charges forthwith to the court having jurisdiction over the offenses charged and to the prosecuting official charged with prosecuting the offense. Section 16–14–103, C.R.S. Within ninety days after receipt by the court and the prosecuting official of a defendant's request for final disposition, the state must bring the defendant to trial. Section 16–14–104, C.R.S. Otherwise, unless the ninety day period is extended for cause or by stipulation, the charges must be dismissed. *Id.*

■ In this case the defendants allege that they are entitled to dismissal of the charges pending against them because of the reformatory superintendent's failure to notify them promptly of pending charges "of which the superintendent [had] knowledge." Section 16–14–102(2). The People argue that section 16–14–102(2) is not applicable unless the superintendent had actual knowledge of the pending charges, knowledge which the People claim was lacking in both cases.[5] The district court did not determine whether the superintendent had actual knowledge of the charges at issue, but, in its dismissal of the charges against Lewis, noted:

These cases involve charges against inmates who are alleged to have commit-

---

3. Section 16–13–101, C.R.S.

4. "**16–14–102. Request for disposition of untried complaint or information.** (1) Any person who is in the custody of the department of corrections pursuant to section 16–11–301 or parts 1 and 2 of article 13 of this title may request final disposition of any untried indictment, information, or criminal complaint pending against him in this state. The request shall be in writing addressed to the court in which the indictment, information, or criminal complaint is pending and to the prosecuting official charged with the duty of prosecuting it and shall set forth the place of confinement.

(2) It is the duty of the superintendent of the institution where the prisoner is confined to promptly inform each prisoner, in writing, of the source and nature of any untried indictment, information, or criminal complaint against him of which the superintendent has

knowledge, and of the prisoner's right to make a request for final disposition thereof.

(3) Failure of the superintendent of the institution where the prisoner is confined to inform a prisoner, as required by subsection (2) of this section, within one year after a detainer from this state has been filed with the institution where the prisoner is confined shall entitle the prisoner to a dismissal with prejudice of the indictment, information, or criminal complaint."

5. The People also assert that a violation of section 16–14–102(2) does not require dismissal of the charges. This issue is controlled by our decision in *People v. Bean*, 650 P.2d 565 (Colo. 1982) (The proper sanction for failure to comply with the Uniform Act is dismissal of the charges with prejudice.). The People do not challenge the district court's holding that notice of pending charges given 76 days after the filing of those charges is not "prompt" notification.

ted criminal acts in this county arising from their status as inmates of an institution which is located in this same county. In these circumstances, a prosecutor should be charged with knowledge of the mandates of the Uniform Act, and be held to the duties of an official which are described there, even though the Uniform Act does not specifically include prosecutors within its parameters. Due process and fundamental fairness would prevent a prosecutor from violating inmates' rights to prompt notice and advisement where the statutory procedures are specific with respect to the duties of prison officials.

The district court, in its order dismissing the escape charge against Bowman, held that "[w]here the superintendent (i.e., prison officials), is the one who is bringing the complaint against the prisoner, he must be deemed to know that there is an untried charge against the prisoner ...." [6]

Relying on the explication of the purposes of the Uniform Act in *People v. Swazo*, 199 Colo. 486, 610 P.2d 1072 (1980), and *People v. Bean*, 44 Colo.App. 373, 619 P.2d 72 (1980), *affirmed* 650 P.2d 565 (Colo. 1982), the district court noted that a primary purpose of the act is to allow prisoners to insist upon speedy disposition of untried charges so that prisoner rehabilitation programs will not be continually disrupted by ongoing prosecutions. *Accord, People v. Mascarenas*, 666 P.2d 101 (Colo. 1983). Since the degree of disruption of rehabilitation programs by prosecution of

untried charges does not depend upon whether the prison superintendent has actual knowledge of the charges, the district court read the Uniform Act to require the district attorney to inform the superintendent of any charges filed. The district court accomplished this result by imputing knowledge of the district attorney's office to the prison superintendent, at least where the prison supervisor "is the one who is bringing the complaint against the prisoner" and where the charges are filed in the county in which the institution having custody of the prisoner is located. Implicit in the district court's opinion is the conclusion that, in the context of the Uniform Act's policy of preventing disruption of rehabilitative programs, it would not make sense to read section 16–14–102(2) as applying only to charges known to the prison superintendent.[7]

Preventing the disruption of rehabilitation programs, however, is not the only purpose of the Uniform Act. Another important purpose of the act provides a basis for distinguishing untried charges of which prison officials have actual knowledge from other untried charges. The United States Court of Appeals for the Second Circuit in *United States v. Ford*, 550 F.2d 732 (2d Cir.1977), *aff'd sub nom. United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), a thorough and well-documented opinion, summarized the policy concerns of the drafters of the Interstate Agreement on Detainers.[8] Stated the Court, *inter alia:*

---

6. Taken literally, the district court's statement that the prison superintendent "is the one who is bringing the complaint" is inaccurate. The charges were filed by the district attorney's office. The prison superintendent notified the district attorney's office of the escape and punished one of the defendants administratively. Whether and when to file charges is within the discretion of the district attorney. *Sandoval v. Farish*, 675 P.2d 300 (Colo.1984).

7. In the course of its analysis, because of an issue raised by the district attorney, the district court held unconstitutional section 16–14–102(3) of the Uniform Act, stating that the section's provision for dismissal of charges after one year if a prisoner is not informed of a

detainer filed with the prison violates state and federal constitutional guarantees of equal protection since prisoners uninformed of out-of-state detainers are entitled to dismissal after less than one year under the Interstate Agreement on Detainers, sections 24–60–501 to –507, C.R.S. Because the proper interpretation of section 16–14–102(3) is not an issue in this case, we vacate the district court's holding and express no opinion as to the constitutionality of the section.

8. Generally, the Uniform Mandatory Disposition of Detainers Act and the Interstate Agreement on Detainers, sections 24–60–501 to –507, C.R.S., embody identical policies and the principles of one may be applied to the other. *People v. Bean*, 650 P.2d 565 (Colo.1982).

Prison authorities often accorded detainers considerable weight in making decisions with respect to the terms and conditions of the prisoner's incarceration and release on parole. Sometimes the prisoner would automatically be held under maximum security. Sometimes he would be ineligible for special work programs, athletic programs, release for visits to relatives' death beds or funerals, or special minimum security facilities. Often detainers precluded the granting of parole. Despite these serious consequences, virtually any law enforcement officer—prosecutor, policeman, or judge—could file a detainer without any procedural prerequisites. No pending indictment or other formal notification of charges was generally required. Indeed, it was estimated that as many as 50% of all detainers were allowed to lapse on the prisoner's release, without any attempts at prosecution by the jurisdiction that had filed the detainer. There were even cases in which the only reason the detainer had been filed was to increase the severity of the prisoner's sentence. Thus detainers imposed major unjustifiable hardships on prisoners, and, prior to adoption of the Agreement on Detainers, there was nothing a prisoner could do about them.

530 F.2d at 737–739 (footnotes omitted).

■■■■ This particular problem—which the Uniform Act was enacted, in part, to address—arises only where prison officials have actual knowledge of untried charges, not by virtue of the existence of the charges themselves. In this context, the limitation of section 16–14–102(2) to situations where the prison superintendent has actual knowledge of the untried charges is reasonable. The plain meaning of the section's language [9] requires proof of actual knowledge on the part of the superintendent.[10] Whether the other important policies of the Uniform Act, e.g., preventing the disruption of rehabilitative programs, require that the district attorney also be charged with a special duty of notification is a question for the General Assembly.

■■■■ Generally, the state has the burden to prove compliance with the provisions of the Uniform Act. See People v. Bean, 650 P.2d 565 (1982). In Bean we held that the state must establish that the plaintiff's request for speedy disposition was "forthwith" transmitted to the court under section 16–14–103, C.R.S. Similarly, where the prison superintendent has not promptly notified a defendant of charges which have been filed, the state must prove that the superintendent had no knowledge of those charges. Here, the district court made no findings as to whether the superintendent of the Buena Vista reformatory had actual knowledge of the charges at issue. We therefore vacate the district court's orders and remand the cases for a determination of this fact, and for further proceedings consistent with this opinion.

Rulings reversed and cases remanded.

---

**9.** Legislative enactments should be interpreted according to their plain and obvious meanings. *Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973).

**10.** We do not consider the extent to which the knowledge of other prison employees may be imputed to the superintendent.