The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Steven R. HIGINBOTHAM,
Defendant-Appellee.

No. 83SA494.

Supreme Court of Colorado,
En Banc.

Jan. 21, 1986.

Dennis E. Faulk, Dist. Atty., Roger B. Larsen, Asst. Dist. Atty., Canon City, Steven B. Rich, Deputy Dist. Atty., Fairplay, for plaintiff-appellant.

Simons & Iuppa, Barney Iuppa, Colorado Springs, for deféndant-appellee.

LOHR, Justice.

The People appeal from a judgment of the Fremont County District Court dismissing an information charging the defendant, Steven R. Higinbotham, with escape.[1] The district court held that dismissal was required because Higinbotham, a prisoner, had not been informed promptly of the charge pending against him and of his right to request a final disposition of the charge as required by section 16–14–102(2), 8 C.R.S. (1978). We reverse and remand for reinstatement of the charge and for further proceedings.

I.

On August 17, 1982, Higinbotham escaped from the Fremont Correctional Facility in Canon City. He was back in the custody of law enforcement officers by December 9, 1982, and was returned to the

---

1. § 18–8–208(2), 8 C.R.S. (1985 Supp.).

department of corrections on December 10. On January 17, 1983, Higinbotham was charged by information in Fremont County District Court with one count of escape. On January 25, the department of corrections received a detainer advising of the escape charge and requesting notification to the Fremont County Sheriff before Higinbotham's release from imprisonment.

Section 16–14–102(2), 8 C.R.S. (1978), part of the Uniform Mandatory Disposition of Detainers Act (Uniform Act), provides:

> It is the duty of the superintendent of the institution where the prisoner is confined to promptly inform each prisoner, in writing, of the source and nature of any untried indictment, information, or criminal complaint against him of which the superintendent has knowledge, and of the prisoner's right to make a request for final disposition thereof.

Under the Uniform Act, a prisoner may request final disposition of any untried charge pending against him in Colorado on the basis of which a detainer has been lodged. § 16–14–102(1), 8 C.R.S. (1978). *See People v. Bolin*, 712 P.2d 1002 (Colo. 1986). Within ninety days after the court and the prosecuting official receive such a request in writing, the prisoner must be brought to trial or the charges against him shall be dismissed with prejudice. § 16–14–104, 8 C.R.S. (1978). The ninety-day period can be extended for good cause or by stipulation. *Id.*

Higinbotham appeared in district court on January 26, 1983, for an advisement concerning the escape charge against him. He returned to district court on February 17, and counsel was appointed to represent him. On March 7, a preliminary hearing was held, and probable cause was found to try Higinbotham on the escape charge. However, it was not until March 8, 1983, forty-two days after the department of corrections received the detainer, that officials of the department notified Higinbotham of the existence of the detainer and of his right under the Uniform Act to request final disposition of the charge.

After notification, Higinbotham did not request final disposition of the pending charge pursuant to section 16–14–102(1). Rather, in late November of 1983, Higinbotham filed a motion to dismiss the charge against him for violation of the prompt notification requirement of section 16–14–102(2).

The district court held a hearing on Higinbotham's motion to dismiss on December 5, 1983. The court determined that the forty-two-day delay in notification of Higinbotham by the department violated the prompt notification requirement of section 16–14–102(2). The court then concluded that the appropriate sanction for this violation was dismissal of the escape charge.

II.

On appeal, the People do not challenge the district court's determination that the notification of Higinbotham was not "prompt" within the meaning of section 16–14–102(2). However, they contend that Higinbotham's failure to request final disposition of the charge pursuant to section 16–14–102(1) renders the untimely notification of no significance. In other words, because of Higinbotham's failure to seek speedy disposition of the charge once he was informed of his rights under the Uniform Act, the People argue that Higinbotham has waived the right to assert that the charge should be dismissed as a result of the failure of the department to notify him promptly as required by section 16–14–102(2). We reject this argument. However, we do not agree with the district court's conclusion that the violation of the prompt notification requirement mandated automatic dismissal of the escape charge against Higinbotham without regard to whether he was prejudiced by the violation.

A.

Nothing in the Uniform Act, or in our prior case law construing that act, obligates a defendant to request final disposition of an untried criminal charge against him pursuant to section 16–14–102(1) before the defendant can file a motion to

dismiss that charge because of a violation of the prompt notification requirement of section 16–14–102(2). A request by a prisoner for disposition of an untried criminal charge under section 16–14–102(1) triggers the obligation of the superintendent of the institution in which the prisoner is confined to transmit specified information to the court having jurisdiction of the untried offense and to the prosecuting official. § 16–14–103, 8 C.R.S. (1978). *See People v. Bean*, 650 P.2d 565 (Colo.1982). Receipt of these materials by the court and prosecutor in turn initiates a ninety-day period within which the prisoner must be brought to trial, failing which the charge must be dismissed. § 16–14–104, 8 C.R.S. (1978). This set of obligations and consequences is additional to and distinct from the duty of the superintendent to promptly inform the prisoner of a pending charge under section 16–14–102(2).

■ The People argue that the prompt notification requirement of section 16–14–102(2) simply supplements and gives meaning to a prisoner's right to be tried within ninety days of a request for final disposition of a detainer. As a result, the argument proceeds, unless a prisoner pursues his right to request final disposition under section 16–14–102(1) there can be no remedy for a violation of the prompt notice requirement of section 16–14–102(2). But, to require that a prisoner file a request for final disposition of an untried charge before he can move for dismissal of the charge due to an alleged failure of prompt notification would ignore the fact that lack of prompt notification is an independent violation of the Uniform Act, preventing a prisoner from learning of the right to seek prompt disposition of pending charges that are the subject of a detainer. There is no indication that the legislature intended that such a violation could be cured by a prompt final disposition following a request by the prisoner after tardy notice. Thus, there is no reason in the language or purpose of the statute to require that a prisoner request final disposition of a charge as a condition precedent to filing a motion to dismiss the charge because of an alleged

violation of the prompt notification requirement of section 16–14–102(2).

### B.

After reviewing the statute, the purposes of the Uniform Act and our prior decisions, we conclude that a violation of the prompt notification requirement in section 16–14–102(2) does not mandate an automatic dismissal of the charges against a defendant.

Section 16–14–102(3) provides that if the superintendent of the institution in which the prisoner is confined fails to inform the prisoner of the source and nature of untried charges against the prisoner and of the prisoner's rights under the Uniform Act, as required by subsection (2), within one year after a detainer has been lodged with the institution based on those charges, then the prisoner shall be entitled to a dismissal of the charges underlying the detainer. The directive to dismiss is mandatory. It is irrelevant that the prosecution might be able to prove that the defendant did not suffer any prejudice from the delay. Here, however, although Higinbotham was not "promptly" informed of the existence of the detainer and of his rights under the Uniform Act as required by section 16–14–102(2), he *was* informed less than one year after the detainer was lodged—the period of delay was forty-two days to be exact. Thus, dismissal of the escape charge against Higinbotham is not mandated explicitly by the Uniform Act. To decide what sanction, if any, is to be imposed for this violation of section 16–14–102(2), we must begin with an examination of the purposes furthered by the Uniform Act.

■ We have often stated that the Uniform Act is one of several Colorado statutes implementing the speedy trial rights guaranteed to a defendant under Article II, Section 16, of the Colorado Constitution and under the Sixth and Fourteenth Amendments to the United States Constitution. *E.g., People v. Lewis*, 680 P.2d 226, 228 (Colo.1984); *People v. Bean*, 650 P.2d at 567; *People v. Swazo*, 199 Colo. 486,

489, 610 P.2d 1072, 1074 (1980). However, the primary purpose of the Uniform Act, as with its counterpart, the Interstate Agreement on Detainers (IAD),[2] is to provide a mechanism for prisoners to insist upon speedy and final disposition of untried charges that are the subjects of detainers so that prison rehabilitation programs initiated for the prisoners' benefit will not be disrupted or precluded by the existence of these untried charges. *See People v. Yellen,* 704 P.2d 306, 311–12 (Colo.1985); *People v. Lewis,* 680 P.2d at 229–30. *See also United States v. Mauro,* 436 U.S. 340, 349–56, 98 S.Ct. 1834, 1841–45, 56 L.Ed.2d 329 (1978) (analyzing the purposes of the IAD); *United States v. Ford,* 550 F.2d 732, 737–41 (2nd Cir.1977) (same), *aff'd sub nom., United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *Dodson v. Cooper,* 705 P.2d 500, 502 (Colo.1985) (same).

In *United States v. Ford,* the United States Court of Appeals for the Second Circuit thoroughly analyzed the concerns that arose because of the prior system that allowed detainers to remain on file against a prisoner without disposition, concerns that led eventually to the drafting of the IAD and its adoption by the federal government and many states:

> The disadvantages and potential abuses of this system were many. Prison authorities often accorded detainers considerable weight in making decisions with respect to the terms and conditions of the prisoner's incarceration and release on parole. Sometimes the prisoner would automatically be held under maximum security. Sometimes he would be ineligible for special work programs, athletic programs, release for visits to relatives' death beds or funerals, or special minimum security facilities. Often detainers precluded the granting of parole. Despite these serious consequences, virtually any law enforcement officer—

prosecutor, policeman, or judge—could file a detainer without any procedural prerequisites. No pending indictment or other formal notification of charges was generally required. Indeed, it was estimated that as many as 50% of all detainers were allowed to lapse on the prisoner's release, without any attempts at prosecution by the jurisdiction that had filed the detainer. There were even cases in which the only reason the detainer had been filed was to increase the severity of the prisoner's sentence. Thus detainers imposed major unjustifiable hardships on prisoners, and, prior to adoption of the Agreement on Detainers, there was nothing a prisoner could do about them.

> In addition, the pending charges forming the basis of a detainer might themselves significantly impede the development of a coherent program for the prisoner's punishment and rehabilitation. Often the various charges would arise out of a single criminal episode or out of events occurring within a short period of time. Instead of permitting coordination of sentencing and rehabilitation, the old detainer system often inhibited fair sentencing and effective rehabilitation. ... Similarly, parole boards and prison authorities found it difficult to formulate the prisoner's rehabilitative program, since they were forced to act without knowing whether the prisoner would be convicted on the other pending charges. This same uncertainty also often adversely affected the prisoner's attitude towards his own rehabilitation. No matter how well he might behave and how zealously he might work towards his own rehabilitation, there was no way, as long as a detainer had been lodged and was pending against him, whereby he could count on release within a given period. The system also tended to eliminate the possibility of concurrent sentencing, even

**2.** The Uniform Mandatory Disposition of Detainers Act and the Interstate Agreement on Detainers, codified at section 24–60–501 to –507, 10 C.R.S. (1982), embody like policies, and, generally, the principles of one may be applied to

the other. *People v. Yellen,* 704 P.2d 306, 311 (Colo.1985); *People v. Lewis,* 680 P.2d 226, 229 n. 8 (Colo.1984); *People v. Bean,* 650 P.2d 565, 567–68 (Colo.1982).

when the charges in the various jurisdictions all stemmed out of the same criminal episode or occurred within a short period of time.

Moreover, the prisoner subject to a detainer was handicapped by delay in preparing for trial of the charge upon which it was based. As in all cases of trial delay, witnesses might die, evidence disappear, and memories fade. While the state could gather its evidence and preserve it for an eventual trial, the prisoner, confined in another jurisdiction, was often unable to do so, particularly if he could not afford to retain counsel. Indeed, sometimes he would not even be informed that charges were pending against him.

550 F.2d at 737–40 (footnotes omitted) (quoted in part in *People v. Yellen,* 704 P.2d at 311–12, and in *People v. Lewis,* 680 P.2d at 229–30). Similar concerns underlie the adoption of the Uniform Act.

 We deem it proper that when the Uniform Act is silent as to the remedy for a violation of a certain provision of the act, as it is here, a court should analyze that violation in the light of the purposes to be furthered by the Uniform Act as described above in deciding whether the violation requires dismissal of the charges against the defendant. When faced with a situation such as is presented here, a court should analyze the implications of the violation for the defendant's prison rehabilitation program as well as the subsidiary concern of the impact of the violation on the defendant's speedy trial rights. The prosecution has the burden of proving that a defendant

is not prejudiced, as measured against the purposes of the Uniform Act, by the failure on the part of the superintendent of the institution in which the prisoner is confined to inform the defendant promptly of the existence of the detainer and of the defendant's rights, as required by section 16–14–102(2) of the Uniform Act.[3] *Cf. People v. Lewis,* 680 P.2d at 230 (prosecution has burden to prove compliance with the provisions of the Uniform Act).

By contrasting the mode of analysis that we adopt here with the more limited analytical framework imposed in a similar situation in *State v. Clark,* 222 Kan. 65, 563 P.2d 1028 (1977), the courts of Colorado may be guided in their application of the principles articulated in this opinion. In *Clark,* the Kansas Supreme Court held that because of the absence of an explicit sanction in the IAD for a violation of the prompt notification requirement of that act,[4] the requirement would be construed as directory only. Therefore, whether certain charges against a defendant would be dismissed on the basis of that violation would be gauged only from the viewpoint of the constitutional right to a speedy trial. The court then applied the factors identified in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), that must be considered by a court when determining whether a defendant has been deprived of the constitutional right to a speedy trial. *State v. Clark,* 563 P.2d at 1032. *Accord Coit v. State,* 440 So.2d 409, 412–13 (Fla.App.1983).

 In construing the Uniform Act, we agree with the Kansas and Florida courts

---

**3.** We believe that the prosecutor should have the burden of establishing lack of prejudice in order to avoid a sanction of dismissal for violation of any provision of the Uniform Act for which dismissal has not been mandated by the legislature. There are only two such mandatory dismissal provisions. Section 16–14–102(3) requires that charges against a defendant be dismissed if that defendant is not informed of the charges and of his rights under the Uniform Act within one year after a detainer is lodged with the facility in which the prisoner is incarcerated. Section 16–14–104 mandates dismissal if the state fails to bring a defendant to trial within ninety days after the receipt by the court and

the prosecuting official of a request by the defendant for final disposition of the charges underlying a detainer.

**4.** Whereas the Uniform Act mandates the dismissal of charges when the superintendent of the institution in which a prisoner is confined fails to inform the prisoner of a detainer within one year of filing, section 16–14–102(3), the IAD is silent concerning the remedy for failure to advise a prisoner promptly concerning a detainer lodged against him as required by Article III(c) of the IAD, section 24–60–501.

that in the absence of an express statutory sanction for violation of the prompt notification requirement, automatic dismissal is not required as a remedy for such a violation. However, contrary to the position taken by those courts, we hold that in determining whether to dismiss charges for lack of prompt notification, a court must consider more than the general factors underlying the constitutional right to a speedy trial because the Uniform Act effectuates other policies besides the speedy trial right, as discussed above.

We recognize that our decision today can be read as inconsistent with our holding in *People v. Bean* that, without regard to prejudice, the proper sanction for any violation of the Uniform Act is dismissal, 650 P.2d at 567–68,[5] and with our statement in *dicta* in *People v. Lewis* that the proper sanction for a violation of the prompt notification requirement of the Uniform Act is dismissal of the charges, 680 P.2d at 228 n. 5.[6] To the extent of such inconsistency, we overrule those cases.

We also recognize that our holding today is inconsistent with our decision in *Romans v. District Court*, 633 P.2d 477 (Colo.1981). In *Romans*, we held that a fifty-six-day delay in notifying a prisoner of the filing of a detainer and of the prisoner's rights under the IAD violated the prompt notification requirement in article III(c) of the IAD. We further held that even though the IAD does not provide an express sanc-

tion for a failure to comply with the prompt notification requirement of article III(c), the charges underlying the detainer must be dismissed without any examination of the prejudice suffered by the defendant as a result of the violation. We reached this conclusion on the grounds that compliance with the provisions of the IAD is a prerequisite to jurisdiction, *id.* at 481, and that there is no requirement in the IAD that the prisoner demonstrate prejudice as a result of the failure on the part of the correctional officials to comply with its provisions, *id.*, citing as supporting authority our holding to that effect in *Hughes v. District Court*, 197 Colo. 396, 402, 593 P.2d 702, 706 (1979). Three justices dissented in *Romans*, concluding that the defendant was not prejudiced by the failure to be informed promptly as the record reflected that the defendant knew of the existence of the detainer and of his rights under the IAD, that he exercised his rights by requesting final disposition of the charges underlying the detainer, and that the trial was set within the time required by the IAD. 633 P.2d at 482.

We have since held that rights under the IAD are nonjurisdictional and can be waived. *People v. Moody*, 676 P.2d 691, 695 (Colo.1984). We further erode the foundation of *Romans* by our holding here today, under the analogous Uniform Act, that charges against a defendant must be dismissed for violation of the prompt notifi-

---

5. In *People v. Bean*, we held that prejudice is a relevant factor in determining whether the superintendent of the institution in which the prisoner is confined "forthwith" mailed copies of a prisoner's request for final disposition of charges to the court and the prosecuting official, as required by section 16–14–103. 650 P.2d at 568. We also held that the state has the burden of establishing that the "forthwith" requirement was satisfied. *Id.*

6. In *People v. Lewis*, notification of pending charges was given to two state reformatory inmates seventy-six days after the charges were filed. The People did not challenge the trial court's ruling that such notice was not given "promptly" within the meaning of section 16–14–102(2). The People asserted, however, that the violation of section 16–14–102(2) did not require dismissal of the charges. We stated that

this issue is controlled by our decision in *People v. Bean*, which mandates the sanction of dismissal for failure to comply with the requirements of the Uniform Act. *People v. Lewis*, 680 P.2d at 228 n. 5. However, we need not have discussed that issue, as our central holding in *People v. Lewis* was that the district court erred in dismissing the charges filed against the defendants for a lack of prompt notification under section 16–14–102(2) because the record did not establish that the superintendent of the reformatory had knowledge of the existence of the untried charges. *Id.* at 228–30. Subsequently, in *People v. Yellen*, 704 P.2d 306 (Colo.1985), we held that the filing of a detainer is necessary to trigger the duty of the superintendent under section 16–14–102(2) to inform the prisoner of untried charges and of his right to request formal disposition thereof.

cation provision of the Uniform Act *unless* the prosecution demonstrates that prejudice to the defendant did not result from that violation.

We are mindful of the fact that federal law governs the interpretation of the IAD. *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S.Ct. 703, 708–709, 66 L.Ed.2d 641 (1981); *Dodson v. Cooper*, 705 P.2d at 504 n. 7; *People v. Moody*, 676 P.2d at 695. Our review of the decisions of the United States Supreme Court and other federal courts discloses nothing that is inconsistent with our holding here. In *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the Supreme Court affirmed the dismissal of charges against a defendant because of a violation of the requirement in article IV(c) of the IAD that the defendant be brought to trial within 120 days after that person arrived in the receiving state pursuant to a request for temporary custody following the filing of a detainer. *Id.* at 361–65, 98 S.Ct. at 1847–50. Whether the defendant suffered prejudice as a result of the violation was not discussed by the Court. That decision, however, was based upon article V(c) of the IAD, *see id.* at 348, 348 n. 13, 353, 98 S.Ct. at 1841, 1841 n. 13, 1843, which mandates dismissal of the charges for violation of the 120-day requirement, as does section 16–14–104 of the Uniform Act in the event of a similar violation under that act. We agree that the statutory requirement of dismissal must control in those situations and that whether a defendant is prejudiced by such a violation is irrelevant. *Accord Brown v. Wolff*, 706 F.2d 902, 906 (9th Cir.1983). However, neither the United States Supreme Court nor any of the other federal courts has ever held, as this court did in *Romans* and *Hughes*, that each violation of a provision of the IAD—even those for which the act specifies no sanction—requires dismissal of the charges against the defendant without regard to prejudice.

Most of the decisions of the federal courts concerning the IAD have involved the "anti-shuttling" requirements in articles III(d) and IV(e). *See* § 24-60-501, 10 C.R.S. (1982). These provisions require a receiving state, or the federal government when receiving custody of a prisoner, to bring the defendant to trial on the charges underlying the detainer before returning the defendant to his original place of incarceration or the charges against the defendant must be dismissed. Despite this explicit, mandatory sanction of dismissal, the federal courts are split as to whether dismissal is required when the defendant has not been prejudiced and the rehabilitative purposes of the IAD have not been hindered by a violation of the anti-shuttling provision. *Compare Sassoon v. Stynchombe*, 654 F.2d 371, 374–75 (5th Cir.1981) (dismissal not required when record shows no injury to the defendant), *with United States v. Thompson*, 562 F.2d 232, 234–35 (3rd Cir.1977) (en banc) (clear provisions of the IAD must be applied and charges dismissed without a need for reference to the purposes of the act), *cert. denied*, 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978), and *United States v. Schrum*, 504 F.Supp. 23, 25–28 (D.Kan.1980) (same), *aff'd per curiam*, 638 F.2d 214 (10th Cir.1981). *See also People v. Cella*, 114 Cal.App.3d 905, 170 Cal.Rptr. 915, 924–25 (Cal.App.), *hear'g denied* (Cal.1981) (same as *Sassoon*). And in *United States v. Chico*, 558 F.2d 1047 (2nd Cir.1977), *cert. denied*, 436 U.S. 947, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978), the United States Court of Appeals for the Second Circuit held that the anti-shuttling provisions do not apply to brief transfers of custody between a state and the federal government wholly within one state because the explicit sanction of dismissal in that situation would not be consistent with the purposes of the IAD.

Although we express no opinion as to the soundness of any of these particular holdings regarding the anti-shuttling provisions of the IAD, we see nothing in these cases that would require us to modify our holding today if we were analyzing the prompt notification requirement of the IAD instead of the similar requirement in the Uniform Act. For this reason, our decision today, while it may fatally undermine our holding concerning the IAD in *Romans*, does not

represent a retrenchment from our usual practice of construing and applying provisions of the Uniform Act in a manner consistent with the construction and application of similar provisions in the IAD.

### III.

■ Accordingly, we hold that a defendant is entitled to the dismissal of charges against him that underlie a detainer as a sanction for violation of the prompt notification requirement of section 16–14–102(2) of the Uniform Act unless the prosecution can demonstrate a lack of prejudice to the defendant resulting from that violation. At the time the district court decided to dismiss the escape charge against Higinbotham, that court operated generally on the assumption that because of our holding in *People v. Bean*, there was no issue of prejudice to the defendant to consider once a violation of the prompt notification requirement of the Uniform Act was established. In this situation, the only proper course for us is to reverse the district court's judgment of dismissal and remand the case to the district court for reinstatement of the charge and for proceedings consistent with this opinion. In such proceedings, the court must determine whether the sanction of dismissal shall be imposed for the violation here. The court has leave to hold a new hearing at which the parties may present evidence and arguments addressing the newly articulated standards discussed in this opinion.

■ The judgment of the district court is reversed and the cause is remanded.[7]

ROVIRA, J., concurs in part and dissents in part.

ROVIRA, Justice, concurring in part and dissenting in part:

I concur in the majority opinion except as to Part II A, from which I dissent.

The People contend that Higinbotham's failure to seek speedy disposition of the charge once he was informed of his rights under the Uniform Act resulted in a waiver of his right to assert that the charge should be dismissed for failure of the department to notify him promptly of the detainer.

In response to this argument, the court concludes that lack of prompt notification is an independent violation of the Uniform Act and there is no indication that the legislature intended that a prisoner request final disposition of a charge as a condition precedent to filing a motion to dismiss. Majority op. at 996.

I do not agree with either the People's position or the conclusion reached in the majority opinion. I believe that where, as here, the prisoner was informed of his rights, the Uniform Act contemplates a request for disposition prior to filing a motion to dismiss. At the time the motion to dismiss is considered, the prisoner can then raise the issue of whether he was promptly informed of any untried indictment, information, or criminal complaint, and his right to request final disposition. If the court should determine that he was not promptly informed, the burden of establishing that the prisoner was not prejudiced by such delay would then be on the People.

Resolution of this issue is simple enough. If the legislature does not agree with the court's analysis and conclusion, the Uniform Act can be amended to reflect that

---

**7.** The People also note that more than eight months elapsed between the time Higinbotham was notified of the detainer and the time he filed his motion to dismiss, and they contend that, by this delay, Higinbotham waived any right to assert a violation of the Uniform Act. Nothing in the record suggests that this delay reflected any intention on the part of Higinbotham to waive his right to complain of the violation of section 16–14–102(2). *Cf. People v. Moody,* 676 P.2d 691 (Colo.1984) ("[T]o discour-

age piecemeal litigation and to promote the finality of judgments, prisoner rights under the [Interstate Agreement on Detainers, §§ 24–60–501 to –507, 10 C.R.S. (1982) ] are waived if they are not asserted prior to or during trial." *Id.* at 695.) Here, Higinbotham filed his motion to dismiss prior to trial. However, a delay in filing the motion to dismiss is one factor to be considered when determining whether the defendant was prejudiced by the violation.

view. If it does agree, nothing need be done.