**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Floyd David SLUSHER, Defendant– Appellant.**

**No. 99CA1677.**

Colorado Court of Appeals, Div. IV.

Aug. 16, 2001.

Rehearing Denied Nov. 1, 2001.

Certiorari Denied April 8, 2002.

Ken Salazar, Attorney General, Clemmie Parker Engle, Senior Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Floyd David Slusher, appeals the trial court's order denying his motion for postconviction relief pursuant to Crim. P. 35(c). We affirm.

In February 1989, while on parole following a conviction for sexual assault on a child, defendant was arrested for a parole violation and taken to the Jefferson County jail. Five days after his arrest, he was charged in a new case with three counts of sexual exploitation of a child. The information was subsequently amended to include additional counts of sexual exploitation of a child, sexual assault on a child, and habitual sex offender.

Defendant remained in the Jefferson County jail until, after two continuances to which he consented, trial was held on the new charges in April 1990. The jury returned guilty verdicts on the sexual exploitation charges, and defendant pled guilty to the

habitual sex offender count. His conviction and sentence were affirmed on direct appeal. *People v. Slusher,* 844 P.2d 1222 (Colo.App. 1992). After the supreme court denied certiorari, the mandate issued in February 1993.

In 1994, defendant filed a *pro se* Crim. P. 35(c) motion, raising several allegations of ineffective assistance of counsel as well as other claims. The trial court appointed counsel, who filed a supplemental brief in support of defendant's motion. After a hearing, the court denied the motion. A division of this court affirmed. *People v. Slusher,* (Colo.App. No. 97CA1591, Oct. 8, 1998)(not selected for official publication).

In 1999, defendant filed another *pro se* Crim. P. 35(c) motion, contending for the first time that his rights under the Uniform Mandatory Disposition of Detainers Act (UMDDA), § 16–14–101, et seq., C.R.S.2000, had been violated. Specifically, he alleged that the superintendent of the Jefferson County jail had failed to inform him in writing of the untried charges against him and of his right to request a speedy disposition of the charges, as required under § 16–14–102(2), C.R.S.2000. Defendant further contended that, because the failure to so inform him within one year of the filing of a detainer entitled him to dismissal of the charges pursuant to § 16–14–102(3), C.R.S.2000, the trial court had lost jurisdiction before the April 1990 trial was held. Finally, defendant asserted that his motion was not time-barred under § 16–5–402(1), C.R.S.2000, both because it involved a jurisdictional issue and because his failure to raise the issue earlier was attributable to the ineffective assistance of his trial, appellate, and postconviction counsel.

The trial court denied defendant's motion without a hearing. It found that the motion was time-barred and that, even if the motion were deemed timely, it lacked merit because defendant was not in the custody of the department of corrections (DOC) prior to his conviction and the UMDDA thus did not apply to him.

## I.

Defendant contends that, as a result of the superintendent's noncompliance with § 16–102(3), the trial court lost jurisdiction over the untried charges before his trial; thus, he argues, his postconviction motion raised a jurisdictional defect and should not have been dismissed as time-barred. We disagree.

The time limitations for collateral attacks on criminal convictions do not apply in cases where the court entering the judgment of conviction did not have jurisdiction over the subject matter of the offense. Section 16–5–402(2)(a), C.R.S.2000.

The UMDDA, which governs intrastate detainers, is one of several statutes implementing a defendant's constitutional speedy trial rights. Its primary purpose is to provide a mechanism for prisoners to obtain speedy and final disposition of untried charges that are the subject of detainers. *People v. Higinbotham,* 712 P.2d 993 (Colo. 1986); *People v. Naulls,* 937 P.2d 778 (Colo. App.1996).

The UMDDA's counterpart governing interstate detainers, the Interstate Agreement on Detainers (IAD), § 24–60–501, et seq., C.R.S.2000, embodies policies similar to those in the UMDDA. Generally, the principles applicable to the IAD may be applied to the UMDDA. *People v. Higinbotham, supra.*

The UMDDA provision at issue here, § 16–14–102, states:

(1) Any person who is in the custody of the department of corrections pursuant to section 16–11–301 or parts 1 and 2 of article 13 of this title may request final disposition of any untried indictment, information, or criminal complaint pending against him in this state.

· · ·

(2) It is the duty of the superintendent of the institution where the prisoner is confined to promptly inform each prisoner, in writing, of the source and nature of any untried indictment, information, or criminal complaint against him of which the superintendent has knowledge, and of the prisoner's right to make a request for a final disposition thereof.

(3) Failure of the superintendent of the institution where the prisoner is confined

to inform a prisoner, as required by subsection (2) of this section, within one year after a detainer from this state has been filed with the institution where the prisoner is confined shall entitle the prisoner to a dismissal with prejudice of the indictment, information, or criminal complaint.

A provision analogous to § 16–14–102(2) is found in the IAD at § 24–60–501, art. III(c), C.R.S.2000, which states:

The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

The IAD includes no direct analog to § 16–14–102(3). However, like § 16–14–102(3), the IAD makes dismissal with prejudice the remedy for a violation of the prisoner's rights. *See* § 24–60–501, art. V(c), C.R.S. 2000.

### A.

We initially note that, as the People concede and contrary to the trial court's ruling, the UMDDA provisions set forth above were applicable here because defendant was "in the custody of the department of corrections" even though he was in county jail. *See People v. Campbell,* 742 P.2d 302 (Colo.1987)(although held in county jail, defendant on parole was in DOC custody for purposes of § 16–14–102(1)).

Further, although the superintendent's duties under § 16–14–102 arise only if a detainer has been filed, *see People v. Morgan,* 712 P.2d 1004 (Colo.1986), the record is insufficient to permit us to conclude, as the People argue, that no detainer was or would have been filed as to the new charges.

### B.

However, even if we assume a detainer was filed, we conclude that any violation of the UMDDA notification requirement did not deprive the trial court of subject matter jurisdiction.

In *People v. Higinbotham, supra,* the supreme court held that a violation of the prompt notification requirement in § 16–14–102(2) did not require dismissal of the charges against the defendant if the People could establish that the defendant was not prejudiced by the violation. In so holding, the court necessarily recognized that noncompliance with § 16–14–102(2) did not result in a loss of jurisdiction on the part of the trial court. *See also Sweaney v. District Court,* 713 P.2d 914 (Colo.1986)(defendant whose right to notification under § 24–60–501, art. III(c), of the IAD had been violated was entitled to dismissal of charges as a sanction unless prosecution could demonstrate lack of prejudice from violation).

Although *Higinbotham* and *Sweaney* thus establish that violations of the notification requirements in the IAD or in § 16–14–102(2) of the UMDDA do not deprive the court of jurisdiction, defendant argues that a different conclusion is warranted here because his motion also alleged a violation of § 16–14–102(3). We disagree.

Section 16–14–102(3) does not impose any further obligations on the superintendent beyond those in § 16–14–102(2), but simply states that, if the § 16–14–102(2) obligations are not carried out within one year after a detainer is filed, such noncompliance "shall entitle the prisoner to a dismissal with prejudice" of the charges.

As defendant points out, § 16–14–102(3) has no direct analog in the IAD. Further, because of the specific remedy provided, a violation of § 16–14–102(3), in contrast to a violation of § 16–14–102(2), entitles the prisoner to dismissal of the charges regardless of whether he or she suffered any prejudice from the delay in notification. *People v. Higinbotham, supra.*

However, neither *Higinbotham* nor § 16–14–102(3) states that a violation of § 16–14–102(3) automatically deprives the trial court of jurisdiction over the charges against the defendant. In this regard, § 16–14–102(3) contrasts with another UMDDA provision, § 16–14–104(1), C.R.S.2000, which addresses the right of a prisoner to request trial within ninety days. Section 16–14–104(1) states in relevant part:

If, after such a request, the indictment, information, or criminal complaint is not

brought to trial within that period, *no court of that state shall any longer have jurisdiction thereof,* nor shall the untried indictment, information, or criminal complaint be of any further force or effect, and the court shall dismiss it with prejudice. (Emphasis supplied.)

In *People v. Mueller,* 851 P.2d 211 (Colo. App.1992), a division of this court construed § 16–14–104(1) in accordance with its plain language and held that when the defendant's request pursuant to this section for trial within ninety days was not granted and the ninety-day requirement was not waived, the trial court lacked jurisdiction to render its judgment of conviction.

In *People v. Carroll,* 939 P.2d 452 (Colo. App.1996), another division held that the defendant had waived his claim of an IAD violation—which, as noted, would have entitled him to dismissal with prejudice—by pleading guilty. In so holding, the division distinguished *Mueller* on the basis that the IAD provisions did not contain the express jurisdictional limitation set forth in § 16–14–104(1).

Similarly here, we conclude that a violation of § 16–14–102(3), like a violation of § 16–14–102(2), does not automatically deprive the trial court of jurisdiction to proceed. Thus, defendant may not avoid the § 16–5–402(1) time bar on the basis that his motion alleged a jurisdictional defect.

In light of our resolution of this issue, we do not reach the People's alternative argument that defendant waived his UMDDA claim by failing to assert it before trial.

## II.

We further agree with the trial court that defendant did not allege facts in his motion that would excuse his failure to raise the UMDDA issue within three years after his conviction became final.

The three-year time limitation in § 16–5–402(1) does not apply if the failure to seek relief within that time period was the result of circumstances amounting to justifiable excuse or excusable neglect. Section 16–5–402(2)(d), C.R.S.2000.

■ Defendant asserted in his motion that he had not discovered the UMDDA is-

sue until 1998 and that his failure to seek earlier relief was attributable to the inadequate assistance of his previous attorneys. However, recent discovery of a legal basis for a collateral attack on a conviction does not constitute excusable neglect where the defendant has not otherwise demonstrated some unavoidable hindrance that would cause a reasonably prudent person to neglect to pursue timely collateral relief. *See People v. Vigil,* 955 P.2d 589 (Colo.App.1997); *see also People v. Rowe,* 837 P.2d 260 (Colo.App.1992)(defendant's arguments that he had only a limited education, was unaware that his convictions could be attacked, and had not been advised of that fact by his counsel were insufficient to constitute excusable neglect), *rev'd on other grounds,* 856 P.2d 486 (Colo.1993).

Even assuming that defendant had rights under the UMDDA, that his former counsel failed to advise him of those rights, and that he did not discover the issue until 1998, these circumstances do not excuse his delay in raising the issue. With the assistance of counsel, defendant sought postconviction relief in 1994 on the basis of numerous specific and detailed allegations of ineffective assistance of counsel. However, although defendant characterized the UMDDA issue in his 1999 motion as one that could be "easily gleaned from the record," he offered no explanation why he did not include counsel's failure to advise him of the UMDDA issue in his 1994 postconviction motion or, in any event, raise it by separate motion within three years of the date of his conviction.

In sum, we agree with the trial court that defendant's motion for postconviction relief was time-barred and that he failed to allege facts amounting to justifiable excuse or excusable neglect. Therefore, the court did not err in denying the motion without a hearing. *See People v. Xiong,* 940 P.2d 1119 (Colo. App.1997).

The order is affirmed.

Judge RULAND and Judge ROTHENBERG concur.