23CA1356 Peo v Fernau 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1356
El Paso County District Court No. 13CR2230
Honorable Jessica L. Curtis, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Casey Thomas Fernau,

Defendant-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE GOMEZ
Fox and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General & Assistant Solicitor General, Denver, Colorado, for Plaintiff-
Appellee

Mark G. Walta, Alternate Defense Counsel, Littleton, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1      Defendant, Casey Thomas Fernau, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief as untimely filed.  He contends that the court erred by finding that he didn't establish that the failure to timely file the motion was the result of justifiable excuse or excusable neglect.  We disagree and, therefore, affirm.

## I.      Background

¶ 2      The prosecution charged Fernau with five counts of aggravated robbery, one count of conspiracy to commit aggravated robbery, one count of first degree aggravated motor vehicle theft, one count of conspiracy to commit first degree aggravated motor vehicle theft, and two habitual criminal counts.  Fernau was out of custody on bond for felony charges pending in other criminal cases at the time of the charged offenses.

¶ 3      Fernau later pleaded guilty to two counts of aggravated robbery in exchange for stipulated sentencing terms, the dismissal of the other felony charges in this case, and the dismissal of six other criminal cases.  In 2014, the district court sentenced him to two consecutive ten-year terms in the custody of the Department of Corrections (DOC), which were run consecutive to a four-year DOC

sentence imposed in a separate criminal case. Fernau didn't appeal the judgment of conviction or sentence.

¶ 4 In 2018, Fernau filed an untimely Crim. P. 35(b) motion for a reduction of his sentence, in which he argued that the failure to timely file that motion was due to the ineffective assistance of the same counsel who represented him during the plea proceedings. The postconviction court denied the motion, finding that counsel's purported inaction didn't excuse the untimely filing and that, nevertheless, the original sentence imposed was proper.

¶ 5 In 2021, Fernau filed a Crim. P. 35(c) motion, which was later supplemented by appointed postconviction counsel. In that motion, Fernau asserted that his plea counsel was ineffective for misadvising him that he would be parole eligible after serving 50 percent of his sentence. He also asserted that he wouldn't have pleaded guilty had he known that he would actually reach parole eligibility only after serving 75 percent of his sentence. Fernau argued that justifiable excuse or excusable neglect existed to excuse the untimely filing of his motion because he had only recently learned about the correct parole eligibility calculation and, until

2

then, he'd had no reason to question plea counsel's incorrect parole eligibility advisement.

¶ 6 At a hearing on the issue of justifiable excuse or excusable neglect, Fernau testified that "[t]he only way" a prison inmate can check on their parole eligibility date is to meet with a case manager, and that an inmate's ability to schedule such a meeting was a "[n]early impossible process." However, he later acknowledged that, during his incarceration, he'd had three in-person meetings with his case managers. He further admitted that an inmate's parole eligibility date can be retrieved from the DOC's online inmate database. Fernau stated that he didn't ask his case managers about his parole eligibility date at their meetings and that, despite speaking with his mother a couple times each week, he didn't ask her to look up his parole eligibility date on the DOC's online database.

¶ 7 Fernau testified that he didn't inquire into his parole eligibility date because knowledge of the date would have been a "painful remainder of how much more time" he had to serve, and he wanted to serve his time without counting down to a release date. Instead, he said, he focused his time in the DOC on ensuring that he would

3

be granted parole when he became eligible. And he said he learned that plea counsel's 50 percent parole eligibility advisement was incorrect only when his case manager advised him that his actual parole eligibility date precluded him from being moved to minimum restricted custody.

¶ 8     In finding that Fernau didn't establish justifiable excuse or excusable neglect for the untimely filing of his Crim. P. 35(c) motion, the postconviction court questioned the credibility of Fernau's testimony that he had only recently discovered his correct parole eligibility calculation. But the court held that, even if he didn't learn about his parole eligibility date until recently, Fernau had reason to question the accuracy of plea counsel's alleged parole eligibility advisement years earlier, and there were no circumstances or outside influences that prevented him from timely filing a collateral challenge to his conviction.

¶ 9     Specifically, the postconviction court found that Fernau's Crim. P. 35(b) motion demonstrated that, in 2018, he was "very focused on his sentence, the terms of his sentence," and had concerns with the quality of plea counsel's representation. The court accordingly determined that, "[a]t the very least, [Fernau] was

4

given an opportunity at that time to realize that his plea counsel had not completely done the things that he wished for them to do, and there may have been a problem with plea counsel's quality of representation." And, the court further determined, despite being "focused on his sentence and the terms of his sentence for some time," Fernau could have, but did not, inquire about his parole eligibility date during the meetings with his case managers. The court also distinguished the facts Fernau alleged from those in *People v. Chavez-Torres*, 2019 CO 59, ¶¶ 24-30, which involved defense counsel's alleged failure to advise the defendant of the immigration consequences of his plea.

## II. Legal Authority and Standard of Review

¶ 10 A Crim. P. 35(c) motion must be filed within three years of a defendant's conviction for a felony offense other than a class 1 felony. § 16-5-402(1), C.R.S. 2024; Crim. P. 35(c)(3)(I). "For purposes of [section] 16-5-402 and postconviction review, if there is no direct appeal, a conviction occurs when the trial court enters judgment and sentence is imposed." *People v. Collier*, 151 P.3d 668, 671 (Colo. App. 2006). But, as relevant here, a postconviction claim shall be excluded from the time limitation period where a court

finds that the "failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." § 16-5-402(2)(d).

¶ 11    "[T]he justifiable excuse or excusable neglect exception must be evaluated by balancing the interests under the facts of a particular case so as to give effect to the overriding concern . . . that a defendant have the meaningful opportunity required by due process to challenge [their] conviction." *People v. Wiedemer*, 852 P.2d 424, 441 (Colo. 1993). The Colorado Supreme Court has provided a non-exhaustive list of factors important to this balancing consideration:

> (1) whether there existed circumstances or outside influences preventing a challenge to a prior conviction; (2) whether a defendant having reason to question the constitutionality of a conviction investigates its validity and takes advantage of avenues of relief that are available; (3) whether a defendant either knew that the conviction was constitutionally infirm or had reason to question its validity; (4) whether a defendant had other means of preventing the government's use of the conviction so that a post-conviction challenge was previously unnecessary; (5) the length of time that has elapsed between the date of conviction and defendant's challenge; and (6) the effect that such period has on the state's ability to defend against the challenge.

*People v. Vigil*, 983 P.2d 805, 809-10 (Colo. App. 1999) (citing *Wiedemer*, 852 P.2d at 441-42).

¶ 12    Whether a defendant has demonstrated justifiable excuse or excusable neglect is a question of fact to be resolved by the postconviction court. *People v. Chavez-Torres*, 2016 COA 169M, ¶ 14, *aff'd*, 2019 CO 59; *People v. Clouse*, 74 P.3d 336, 340 (Colo. App. 2002).[1]

¶ 13    We review a postconviction court's factual findings for clear error and its legal conclusions de novo. *Martinez v. People*, 2024 CO 6M, ¶ 24; *People v. Smith*, 2024 CO 3, ¶ 16. Under the clear-error standard, we must affirm the court's findings so long as they are supported by the record. *Martinez*, ¶ 34; *see also Smith*, ¶ 16; *Vigil*, 983 P.2d at 810 (affording deference to a court's factual findings after a hearing concerning justifiable excuse or excusable

---

[1] Fernau contends that while the factual findings underlying this issue are reviewed for clear error, the ultimate determination of whether a defendant has demonstrated justifiable excuse or excusable neglect is a question of law to be reviewed de novo. But he doesn't cite any authorities holding as much, and the authorities cited in the text indicate otherwise. Nonetheless, even if we were to review the ultimate determination de novo, we agree with the postconviction court's conclusion that Fernau hasn't demonstrated justifiable excuse or excusable neglect.

neglect). We also defer to the court's credibility findings following a hearing if there is record support for them. *See People v. Washington*, 2014 COA 41, ¶ 17; *People v. Kyler*, 991 P.2d 810, 819 (Colo. 1999); *see also People v. Wheeler*, 2020 CO 65, ¶ 8.

### III.    Analysis

¶ 14    Having reviewed the record, we conclude that the postconviction court did not clearly err in finding that Fernau failed to establish justifiable excuse or excusable neglect to excuse the untimely filing of his Crim. P. 35(c) motion.

¶ 15    The record shows that parole eligibility was an important factor in Fernau's decision to plead guilty and in his approach to serving his DOC sentence. Indeed, in his Crim. P. 35(c) motion, Fernau insisted that, despite the stipulated sentencing terms and the dismissal of multiple felony charges in this case and other cases, he accepted the plea agreement primarily in reliance on plea counsel's advisement that he would become parole eligible after serving 50 percent of his sentence. And, in his Crim. P. 35(b) motion, Fernau asked for a sentence reduction so that he could be released on parole as soon as possible. In denying the Crim. P. 35(b) motion, the court expressed its belief that Fernau "ha[d] done

very well in prison" and "appear[ed] to deserve parole consideration whenever he [wa]s eligible."

¶ 16    Yet, despite the purported importance of parole eligibility to Fernau, he assertedly chose not to avail himself of opportunities to inquire into the DOC's calculation of his parole eligibility date and the veracity of the advice plea counsel had allegedly given him regarding that date.  He made this decision despite agreeing, as a term of the plea documents, that "[his] plea [wa]s voluntary and [wa]s not the result of any promises or representations from anyone, including [his] lawyer," and despite acknowledging in the Crim. P. 35(b) motion that he had concerns about other aspects of plea counsel's representation.

¶ 17    We are convinced that this record supports the postconviction court's factual finding that, at a minimum, Fernau had reason to question the validity of his conviction earlier than 2021 and that there were no circumstances or outside influences that hindered him from pursuing the issue.  *See People v. Slusher*, 43 P.3d 647, 651 (Colo. App. 2001) ("[R]ecent discovery of a legal basis for a collateral attack on a conviction does not constitute excusable neglect where the defendant has not otherwise demonstrated some

unavoidable hindrance that would cause a reasonably prudent person to neglect to pursue timely collateral relief.").

¶ 18    Fernau argues, however, that plea counsel's alleged ineffective assistance itself constituted justifiable excuse or excusable neglect for the untimely filing of his Crim. P. 35(c) motion.  And it is true that ineffective assistance of counsel can constitute justifiable excuse or excusable neglect.  *See Close v. People,* 180 P.3d 1015, 1019 (Colo. 2008); *People v. Valdez,* 178 P.3d 1269, 1278 (Colo. App. 2007).  But to establish justifiable excuse or excusable neglect based on such ineffective assistance, a defendant must demonstrate that the ineffective assistance caused the failure to timely file a postconviction motion.  *See, e.g., Valdez,* 178 P.3d at 1279-80, 1282-83 (counsel's inaction on the defendant's postconviction motion constituted ineffective assistance, which established justifiable excuse or excusable neglect to avoid the application of the time bar to his untimely filed claims); *People v. Chang,* 179 P.3d 240, 244, 246 (Colo. App. 2007) (counsel's inaction on the defendant's postconviction motion may constitute ineffective assistance, which could establish justifiable excuse or excusable neglect to avoid the application of the time bar to his untimely filed

claims). Otherwise, if every ineffective assistance claim were deemed to constitute justifiable excuse or excusable neglect, then such claims would always be exempt from section 16-5-402(1)'s timeliness requirements.

¶ 19 But Fernau didn't demonstrate why plea counsel's asserted ineffective assistance years before caused the untimely filing of his Crim. P. 35(c) motion. Accordingly, we conclude that he didn't establish justifiable excuse or excusable neglect. *See* § 16-5-402(1); *Wiedemer*, 852 P.2d at 441; *see also People v. Hinojos*, 2019 CO 60, ¶ 26 (recognizing that no appellate court has held in an ineffective assistance case, other than one involving immigration advice, that an attorney's affirmative misadvisement can constitute justifiable excuse or excusable neglect for an untimely Crim. P. 35(c) motion).

## IV. Disposition

¶ 20 The order is affirmed.

JUDGE FOX and JUDGE BERNARD concur.