**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

**v.**

**Steve Allen MORGAN, Defendant-Appellee.**

**No. 84SA120.**

Supreme Court of Colorado, En Banc.

Jan. 27, 1986.

██

██

———

Dennis E. Faulk, Dist. Atty., Roger B. Larsen, Asst. Dist. Atty., Canon City, Steven B. Rich, Deputy Dist. Atty., Fairplay, for plaintiff-appellant.

William Gobin Fox, Canon City, for defendant-appellee.

LOHR, Justice.

The People appeal from a judgment of the Fremont County District Court vacating defendant Steve Allen Morgan's conviction for esape [1] and dismissing the information containing the charge. The district court held that dismissal was required because Morgan, a prisoner, had not been informed promptly of the escape charge pending against him and of his right to a final disposition of the charge as required by section 16–14–102(2), 8 C.R.S. (1978). We reverse and remand with directions to reinstate the conviction.

## I.

On August 31, 1981, Morgan escaped from the Territorial Correctional Facility in Canon City. He was apprehended the next day and was returned to the custody of the department of corrections. On December 4, 1981, Morgan was charged by information in Fremont County District Court with one count of escape. No detainer based on the escape charge was ever filed with the correctional facility and lodged against Morgan.

Morgan appeared in district court on December 9, 1981, for an advisement on the charge. After a two-day trial in July 1982, a jury found Morgan guilty of escape. On February 28, 1983, the court sentenced Morgan to imprisonment for ten years and a day, the sentence to run consecutive to any sentence or sentences that Morgan was serving or had yet to serve. Morgan filed a motion for new trial, which the court denied.

The defendant appealed to the Colorado Court of Appeals. During the pendency of the appeal, that court granted Morgan's motion for remand to the trial court so that he could file a motion to dismiss the charge because of a lack of compliance by the government with the requirements of the Uniform Mandatory Disposition of Detainers Act (Uniform Act), sections 16–14–101 to –108, 8 C.R.S. (1978). In particular, Morgan argued that dismissal of the charge was required because of the failure on the part of the superintendent of the institution in which Morgan was confined to comply with the following requirement:

> It is the duty of the superintendent of the institution where the prisoner is confined to promptly inform each prisoner, in writing, of the source and nature of any untried indictment, information, or criminal complaint against him of which the superintendent has knowledge, and of the prisoner's right to make a request for final disposition thereof.

§ 16–14–102(2), 8 C.R.S. (1978). [2]

On February 9, 1984, the district court held a hearing and granted the motion to dismiss, vacating the conviction. On February 27, 1984, the district court held a further hearing, on its own motion, to reconsider the order to dismiss in light of our decision in *People v. Moody*, 676 P.2d 691 (Colo.1984). In *Moody*, we held that prisoners' rights under the Interstate Agreement on Detainers (IAD), sections 24–60–501 to –507, 10 C.R.S. (1982), are waived if they are not asserted prior to or during trial. 676 P.2d at 694–95. The district court concluded that our analysis of the IAD in *Moody* should also apply to the Uniform Act and that because Morgan did not assert his rights under the Uniform Act prior to or during trial, Morgan had waived those rights. For this reason, the district court concluded that the charge against Morgan should not have been dismissed. However, the court declined to reinstate the conviction, ruling that the court had been divested of jurisdiction over the case by its February 9, 1985, order of dismissal.

1. § 18–8–208(2), 8 C.R.S. (1985 Supp.).

2. Under the Uniform Act, a prisoner may request final disposition of any untried charge pending against him in Colorado on the basis of which a detainer has been lodged. § 16–14–102(1), 8 C.R.S. (1978); *see People v. Bolin*, 712 P.2d 1002 (Colo. January 21, 1986). Within ninety days after the court and the prosecuting official receive such a request in writing, the prisoner must be brought to trial or the charges against him shall be dismissed with prejudice. § 16–14–104, 8 C.R.S. (1978). The ninety-day period can be extended for good cause or by stipulation. *Id.*

On appeal, the People argue that the district court retained jurisdiction to reconsider its motion to dismiss and to reinstate the conviction. For that reason, the People request that we remand the matter to the district court for reinstatement of the conviction. The People further contend that even if the district court did not retain jurisdiction to reconsider its order to dismiss, the district court was correct in concluding that Morgan waived any right to complain of a violation of the provisions of the Uniform Act by failing to assert that right prior to or during trial. Thus, this argument concludes, this court should reverse and remand for reinstatement of the conviction. Finally, the People argue that the district court originally erred by holding that the superintendent of the institution in which Morgan was confined had knowledge of the untried charge against Morgan. For this reason, the People contend, the prompt notification requirement in section 16–14–102(2) of the Uniform Act was never triggered, and, consequently, there was no violation of that provision of the Uniform Act. Absent a violation of the Uniform Act, the district court erred by vacating Morgan's conviction and dismissing the charge.

We hold that due to the fact that a detainer was never filed based on the escape charge, a duty on the part of the superintendent under section 16–14–102(2) to inform Morgan never arose. For that reason, the district court erred in finding a violation of the prompt notification requirement of the Uniform Act and in dismissing the charge. Because of the manner in which we resolve this appeal, we need not address the issues raised by the People.

## II.

Our holding in this case is controlled by our decision in *People v. Yellen*, 704 P.2d 306 (Colo.1985), and our decision in *People v. Bolin*, 712 P.2d 1002 (Colo.1986). In *People v. Yellen*, we held that although section 16–14–102(2) does not specifically refer to detainers, a superintendent's obligation to inform pursuant to that section

does not arise until a detainer has been filed. Analyzing that statutory provision in the light of the policies furthered by the Uniform Act, we concluded that a superintendent has "knowledge" of untried charges against a prisoner as that term is used in section 16–14–102(2) only when a detainer has been filed. 704 P.2d at 309–12. *Accord People v. Bolin*, 712 P.2d at 1003.

Here, the district court found that the superintendent, or, more precisely, the staff members to whom the superintendent had delegated his authority, became aware of the charge pending against Morgan when Morgan received two classification reviews concerning his status within the penal system and when the prison authorities received transport orders from the district court ordering Morgan to be transported to court for some proceedings related to the escape charge. We held in *People v. Yellen*, however, that

[a]wareness of pending charges, unlike a detainer, would not insure that the prisoner would be available to the authorities where the charges were pending. Clearly awareness of pending charges in another jurisdiction is not the equivalent of having an actual detainer filed from that jurisdiction. Only the filing of a detainer triggers the superintendent's duty to promptly inform the defendant of his rights under the Act.

704 P.2d at 311 (citation omitted).

We have described a detainer as " 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *People v. Moody*, 676 P.2d 691, 693 n. 2 (Colo.1984), *quoting United States v. Mauro*, 436 U.S. 340, 359, 98 S.Ct. 1834, 1846–47, 56 L.Ed.2d 329 (1978). In *People v. Yellen*, after quoting the foregoing description, we noted that the Council of State Governments defined a detainer as " 'a warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer.' Suggested

State Legislation for 1959, p. 167." 704 P.2d at 311.

The evidence shows that a "classification review" is a document prepared periodically with respect to individual prisoners by staff members of the department of corrections for the purpose of reevaluating the degree of security to be maintained with respect to the prisoner and reassessing the prisoner's assignment to a particular confinement facility. A classification review is not initiated or prepared by officials in a jurisdiction in which charges are pending against the defendant and is in no sense an expression by those officials that the prisoner is wanted to face charges or that it is desired that the prisoner's availability for that purpose be assured. In *People v. Yellen,* we had no difficulty in concluding that a reference in a classification review document to a pending charge did not constitute a detainer with respect to that charge. 704 P.2d at 309, 311–12. Similarly, the references to Morgan's escape contained in the two classification reviews in evidence in this case were made by corrections department officials to explain recommendations with respect to the conditions of the prisoner's confinement. They do not constitute detainers. Therefore, as in *Yellen,* they did not trigger the prompt notification requirement of the Uniform Act. *Id.*

In *Yellen,* there was no issue concerning transport orders. The transport orders involved in the present case were issued by the Fremont County District Court and simply show a district court case number with no specifics about the nature of the charge involved in that case. The orders then state that the presence of the inmate is necessary in the district court on a certain date in the near future for a specified type of court function such as a preliminary hearing or jury trial.

In *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the United States Supreme Court held that a writ of habeas corpus *ad prosequendum* issued by a federal district court, which requires the presence of a prisoner in federal court in much the same manner as the transport orders involved here, is not a detainer for the purposes of the IAD. The Court distinguished a detainer from the writ as follows:

> Unlike a writ of habeas corpus *ad prosequendum* issued by a federal district court, a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. Rather than requiring the immediate presence of the prisoner, a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison. Further action must be taken by the receiving State in order to obtain the prisoner. Before it was made clear that a prosecuting authority is not relieved of its obligation to provide a defendant a speedy trial just because he is in custody elsewhere, see *Smith v. Hooey,* 393 U.S. 374 [89 S.Ct. 575, 21 L.Ed.2d 607] (1969), detainers were allowed to remain lodged against prisoners for lengthy periods of time, quite often for the duration of a prisoner's sentence.
>
> . . . .
>
> Because writs of habeas corpus *ad prosequendum* issued by a federal court pursuant to the express authority of a federal statute are immediately executed, enactment of the [IAD] was not necessary to achieve their expeditious disposition.... When the United States obtains state prisoners by means of a writ of habeas corpus *ad prosequendum,* the problems that the [IAD] seeks to eliminate do not arise; accordingly, the Government is in no sense circumventing the [IAD] by means of the writ. We therefore conclude that a writ of habeas corpus *ad prosequendum* is not a detainer for the purposes of the [IAD].

436 U.S. at 358–59, 360–61, 98 S.Ct. at 1846–48 (footnotes omitted).

We have often held that the IAD and the Uniform Act embody like policies, and, generally, the principles of one may be applied to the other. *See, e.g., People v. Higinbotham,* 712 P.2d 993 at 997 n. 2 (Colo.1986);

*People v. Lewis,* 680 P.2d 226, 229 n. 8 (Colo.1984); *People v. Bean,* 650 P.2d 565, 567–68 (Colo.1982). We are persuaded by the reasoning in *Mauro* that the transport orders from the district court received by the superintendent here, which required that the prison officials transport Morgan to court, do not constitute detainers and did not provide a basis for triggering the prompt notification requirement of section 16–14–102(2) of the Uniform Act. In the absence of a detainer, Morgan had no right under that act to receive such notification. The district court erred by dismissing the escape charge against Morgan on that basis.

We reverse the judgment of the district court and remand the case to that court with directions to reinstate the judgment of conviction. The case must then be returned to the Colorado Court of Appeals for further proceedings with respect to the defendant's appeal from that judgment.