The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Earl William CAMPBELL,
Defendant-Appellee.

No. 85SA251.

Supreme Court of Colorado,
En Banc.

Sept. 8, 1987.

Stuart A. VanMeveren, Dist. Atty., Loren B. Schall, Asst. Dist. Atty., Clifford E. Riedel, Chief Deputy Dist. Atty., and Laurie K. Rottersman, Deputy Dist. Atty., Fort Collins, for plaintiff-appellant.

Miller, Hale & Harrison, Daniel C. Hale, Boulder, for defendant-appellee.

LOHR, Justice.

The People appeal from a judgment of the Larimer County District Court dismissing charges of aggravated robbery and crime of violence against the defendant, Earl William Campbell. The district court dismissed the charges on the basis of a finding and conclusion that the defendant had not been brought to trial within ninety days of receipt of his request for final disposition of the charges, in violation of his rights under the Uniform Mandatory Disposition of Detainers Act, § 16–14–101 to –108, 8A C.R.S. (1986) (the Uniform Act). We affirm.

## I.

The relevant facts are not in dispute. In September of 1982, the defendant was arrested for activities not at issue in the present case and was confined in the El Paso County jail. At the time of his arrest, the defendant was on parole stemming from a sentence imposed in Colorado. The department of corrections placed a "parole hold" on the defendant, and that "hold" remained in effect during all times relevant to this proceeding until the defendant's parole was revoked on May 16, 1985.

The Larimer County charges at issue in the present case arose from events that occurred on or about June 22, 1982, before the defendant was incarcerated in El Paso County. On June 15, 1983, a direct criminal information based upon those events was filed in Larimer County District Court charging the defendant with aggravated robbery, § 18–4–302(1)(b), 8B C.R.S. (1978), and crime of violence, § 16–11–309, 8A C.R.S. (1978). On June 22, 1983, an arrest warrant relating to the Larimer County charges was served upon the defendant in the El Paso County jail, and a "hold" was placed on the defendant with respect to those charges.

The defendant sent a letter dated July 14, 1983, to the chief judge of the Larimer County District Court stating that he had recently been notified "that the Larimer County Sheriff had placed a 'hold' on me under the authority of an arrest warrant" relating to the Larimer County charges. The defendant requested a speedy trial, among other things, but made no mention of the Uniform Act. The letter bears a notation that a copy was sent to the district attorney on August 8, 1983.

On April 27, 1984, the defendant was convicted on criminal charges filed in El Paso County and was sentenced to life imprisonment. He was transported to a department of corrections facility on June 19, 1984, to begin serving that life sentence.

On July 19, 1984, the defendant again wrote a letter to the chief judge of the Larimer County District Court, this time specifically requesting dismissal of the Larimer County charges for violation of the Uniform Act. The court received the letter on July 23, and a copy was received by the district attorney on that same day. No action was taken to bring the matter to trial.

The defendant moved for a new trial on the charges that had resulted in his life sentence, and on July 23 or 24, 1984, he was returned to the El Paso County jail to await proceedings on that motion. In September or October 1984, the El Paso County District Court granted the motion for a new trial and vacated the defendant's judgment of conviction.

The defendant made his first appearance before the Larimer County District Court on December 18, 1984. At that time he

was advised of his rights and of the charges against him, and counsel was appointed to represent him.

On May 20, 1985, counsel for the defendant filed a motion to dismiss the Larimer County charges for violation of the Uniform Act.[1] The motion averred that the defendant had requested final disposition of the Larimer County charges by his letter of July 19, 1984, and that he had not been brought to trial within ninety days of receipt of that letter by the court and prosecuting official, as required by section 16–14–104 of the Uniform Act.

A hearing on all pending motions was set for June 3, 1985. On that date, the court heard argument on the motion to dismiss for violation of the Uniform Act and on June 17 ruled that the defendant's rights under the Uniform Act had been violated and that the Larimer County charges must be dismissed. Specifically, the court concluded that the defendant had been in the legal custody of the department of corrections as a parolee since September 1982, that under the Uniform Act the defendant should have been tried within ninety days of the receipt of his July 19, 1984, letter by the court and the district attorney, and that because the defendant had not been tried within that time dismissal was required.[2] The People appealed from the judgment of dismissal.

On appeal, the People assert that (1) the Uniform Act is inapplicable because a detainer was not filed with the department of corrections based on the Larimer County charges; (2) the ninety day period within which a defendant must be brought to trial after requesting final disposition of charges had not expired because the Uni-form Act requires that the defendant be in the custody of the department of corrections under sentence during the entire ninety days, and the defendant was not; and (3) the district court erred in holding that the defendant's July 19, 1984, letter triggered the ninety day provision of the Uniform Act because the letter failed to meet the minimum requirements of the Uniform Act.

On September 15, 1986, we announced an opinion rejecting the People's arguments and affirming the judgment of the district court dismissing the charges. Shortly thereafter, within the time provided for filing petitions for rehearing, we withdrew our opinion on our own motion and ordered the parties to file additional briefs on the issue of the applicability of the Uniform Act "in light of recent decisions of this Court, including *People v. Yellen,* 704 P.2d 306 (Colo.1985), *People v. Higinbotham,* 712 P.2d 993 (Colo.1986), *People v. Bolin,* 712 P.2d 1002 (Colo.1986), and *People v. Morgan,* 712 P.2d 1004 (Colo.1986)." Thereafter, the parties filed briefs and presented oral argument.

Since the parties are in disagreement and the record is unsatisfactory as to whether a detainer was properly filed on the basis of the Larimer County charges, we first address the question of whether the Uniform Act has any applicability in the absence of the filing of a detainer. We conclude that, under the Uniform Act, the right of a person in the custody of the department of corrections to request final disposition of criminal charges and thereby to obtain a right to trial within ninety days on those charges is not dependent upon the filing of a detainer. We then consider whether the defendant was "in the custody of the de-

---

1. This motion supplemented a hand-written petition filed by the defendant in Larimer County District Court on November 2, 1984, challenging the jurisdiction of the court to proceed with the case.

2. The ninety day provision is set forth in § 16–14–104, 8A C.R.S. (1986), which provides: Within ninety days after the receipt of the request by the court and the prosecuting official, or within such additional time as the court for good cause shown in open court may grant, the prisoner or his counsel being present, the indictment, information, or crim-inal complaint shall be brought to trial; but the parties may stipulate for a continuance or a continuance may be granted on notice to the prisoner's attorney and opportunity to be heard. If, after such a request, the indictment, information, or criminal complaint is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information, or criminal complaint be of any further force or effect, and the court shall dismiss it with prejudice.

partment of institutions" and therefore entitled to rights under the Uniform Act while incarcerated in county jail and whether he adequately asserted the right to request final disposition of the pending Larimer County charges in this case.

## II.

■ The record does not contain any document filed with the sheriff of El Paso County as a detainer in this case and does not permit a definitive determination of whether a detainer was filed within the meaning of the Uniform Act. The initial inquiry, therefore, is whether the Uniform Act has any applicability in the absence of the filing of a detainer. We hold that notwithstanding the absence of a detainer, a person in the custody of the department of corrections has the right under the Uniform Act to request final disposition of untried indictments, informations or criminal complaints pending against that prisoner in Colorado. Accordingly, it is unnecessary to determine whether a detainer was filed with respect to the Larimer County charges.

On several occasions we have described a detainer as "a notification filed with the institution in which a person is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction," the description first set forth in *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978). *People v. Morgan,* 712 P.2d 1004, 1006 (Colo.1986); *People v. Bolin,* 712 P.2d 1002, 1002 n. 2 (Colo.1986); *People v. Yellen,* 704 P.2d 306, 311 (Colo.1985), *cert. denied,* 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 582; *People v. Moody,* 676 P.2d 691, 693 n. 2 (Colo.1984). We have also noted that the Council of State Governments has defined a detainer as " 'a warrant filed against a person already in custo-

dy with the purpose of insuring that he will be available to the authority which has placed the detainer.' Suggested State Legislation for 1959, p. 167." *People v. Morgan,* 712 P.2d 1004, 1006; *People v. Bolin,* 712 P.2d 1002, 1002 n. 2; *People v. Yellen,* 704 P.2d 306, 311.

In *People v. Lewis,* 680 P.2d 226, 230 (Colo.1984), *People v. Yellen,* 704 P.2d at 311–12, and again in *People v. Higinbotham,* 712 P.2d 993, 996–98 (Colo.1986), we discussed the policy concerns created by the existence of outstanding detainers. We noted that "[p]rison authorities often accorded detainers considerable weight in making decisions with respect to the terms and conditions of the prisoner's incarceration and release on parole[,]" and that "[d]espite these serious consequences, virtually any law enforcement officer—prosecutor, policeman, or judge—could file a detainer without any procedural prerequisites." *People v. Lewis,* 680 P.2d at 230 (quoting *United States v. Ford,* 550 F.2d 732, 738 (2d Cir.1977), aff'd sub. nom. *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)); *People v. Yellen,* 704 P.2d at 311–12 (same); *People v. Higinbotham,* 712 P.2d at 997 (same). *See also Martin v. People,* 738 P.2d 789 (Colo.1987). As a result, legislatures across the land have adopted statutes requiring that detainers be brought to the attention of the prisoner and that the prisoner be given a right to obtain speedy disposition of detainers on demand.[3]

In Colorado, legislation of this kind appears in two acts, the Interstate Agreement on Detainers, § 24–60–501 to –507, 10 C.R.S. (1982) (the IAD), and the Uniform Mandatory Disposition of Detainers Act, § 16–14–101 to –108, 8A C.R.S. (1986), adopted on the same day in 1969. Ch. 111 §§ 8, 9, 1969 Colo.Sess.Laws 291–92. The

---

**3.** *See, e.g.,* Cal.Penal Code §§ 1389 to 1389.8 (West 1982) (Interstate Agreement on Detainers (IAD)); Cal.Penal Code § 1381 (West 1982) (similar to Uniform Act); Kan.Stat.Ann. §§ 22–4401 to –4408 (1981) (IAD); Kan.Stat.Ann. §§ 22–4301 to –4308 (1981) (Uniform Act); Minn.Stat. § 629.294 (1986) (IAD); Minn.Stat. § 629.292 (1986) (Uniform Act); N.Y.Crim. Proc.Law § 580.20 (McKinney 1984) (IAD);

Tex.Code Crim.Proc.Ann. art. 51.14 (Vernon 1979) (IAD). For a complete listing of those jurisdictions that have adopted the Uniform Act and those jurisdictions that have enacted into law an agreement on detainers in substantially the form set forth in the Interstate Agreement on Detainers, *see* Unif. Mandatory Disposition of Detainers Act, 11 U.L.A. 196 (1987 Supp.).

IAD governs the disposition of detainers filed in one contracting state relating to charges pending in another, while the Uniform Act relates to detainers based on charges pending in the State of Colorado. We have often stated that these two acts embody like policies, and, generally, the principles of one may be applied to the other. *E.g., Sweaney v. District Court,* 713 P.2d 914, 918 (Colo.1986); *People v. Higinbotham,* 712 P.2d at 997 n. 2; *People v. Yellen,* 704 P.2d at 311; *People v. Swazo,* 199 Colo. 486, 489, 610 P.2d 1072, 1074 (1980).

Article III(a) of the IAD explicitly provides that the IAD is applicable only to circumstances in which there exists an "untried indictment, information, or complaint *on the basis of which a detainer has been lodged against the prisoner....*" § 24–60–501, 10 C.R.S. (1982) (emphasis added).[4] The Uniform Act contains no such specific limitation but instead speaks of "final disposition of any untried indictment, information, or criminal complaint pending against [any person in the custody of the department of corrections pursuant to sentence] in this state." § 16–14–102(1), 8A C.R.S. (1986).[5]

The People urge that notwithstanding the differences in language between Article III(a) of the IAD and section 16–14–102(1) of the Uniform Act, the Uniform Act should be construed to relate only to charges on the basis of which detainers have been filed. We believe that to do so would ignore the important differences between the two statutes and would be contrary to the plain meaning of section 16–14–102(1).

As previously noted, the IAD and the Uniform Act were adopted in Colorado on the same day in 1969. The differences in the language of the two statutes is striking. The applicability of the IAD is specifically limited to charges on the basis of which detainers have been filed. The Uniform Act contains no such limitation. The scope of each provision is apparent from its face, and we must give effect to the plain meaning of the words used by the legislature. *People v. District Court,* 713 P.2d 918, 921 (Colo.1986); *People v. Mascarenas,* 706 P.2d 404, 406 (Colo.1985); *People v. Macias,* 631 P.2d 584, 587 (Colo.1981). *Cf. People v. Gonzales,* 679 P.2d 1085 (Colo.1984) (an arrest warrant that has not resulted in formal charges is not included within the terms "untried indictment, information, or criminal complaint," as used in section 16–14–102(1) of the Uniform Act).

The People assert that *People v. Yellen* is persuasive that we should construe the Uniform Act to be inapplicable unless a detainer has been filed. We do not agree. In *People v. Yellen* we considered that portion of the Uniform Act requiring the superintendent of the institution where the prisoner is confined "to promptly inform each prisoner, in writing, of the source and nature of any untried indictment, information or criminal complaint against him *of which the superintendent has knowledge,* and of the prisoner's right to make a re-

---

**4.** Article III(a) of the IAD, set forth in § 24–60–501, 10 C.R.S. (1982), provides in pertinent part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause

shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

**5.** § 16–14–102(1), 8A C.R.S. (1986), provides:

Any person who is in the custody of the department of corrections pursuant to section 16–11–301 or parts 1 and 2 of article 13 of this title may request final disposition of any untried indictment, information, or criminal complaint pending against him in this state. The request shall be in writing addressed to the court in which the indictment, information, or criminal complaint is pending and to the prosecuting official charged with the duty of prosecuting it and shall set forth the place of confinement.

quest for final disposition thereof." § 16–14–102(2), 8A C.R.S. (1986) (emphasis added). We noted that the mere awareness of a charge does not supply the superintendent with sufficient information to fulfill the duty to inform a prisoner of the "source and nature" of that charge. *People v. Yellen,* 704 P.2d at 310. We further observed that section 16–14–102(3) provides for dismissal of a pending charge if the superintendent fails to inform a prisoner "as required by subsection (2) of this section, within one year *after a detainer* from this state has been filed with the institution where the prisoner is confined[,]" thus indicating that it is intended that a detainer, and not information from some other source, be the origin of knowledge that gives rise to a duty to advise a prisoner of a pending charge. *Id.* (emphasis added). We stated as well that the IAD is specific in requiring that a detainer be filed to trigger the duty of the custodian to advise a prisoner and that we have held that "policy concerns underlying the IAD can be applied to the [Uniform] Act." *Id.* at 311.

In *People v. Yellen* we also noted the comments made by the Council of State Governments in including the proposed Uniform Act in its suggested state legislative program for 1959 that the basic purpose of the Uniform Act is to permit a prisoner to clear up detainers that have been lodged against him. *Id.* Finally, we observed that one of the purposes behind the Uniform Act was to provide a procedure for elimination of detainers because of their adverse effects on the terms and conditions of a prisoner's incarceration and release on parole. *Id.* We discovered no indication that such adverse effects resulted from pending charges as to which no detainer has been filed. *Id.* at 312. We have followed *Yellen* in *People v. Morgan,* 712 P.2d 1004 (Colo.1986), and *People v. Bolin,* 712 P.2d 1002 (Colo.1986).

The question here presented is different, however, from that of the circumstances giving rise to a duty of the superintendent to notify a prisoner of the source and nature of untried charges. We must determine whether a prisoner has a right to disposition of untried charges [6] of which he has knowledge even if no detainer has been filed on the basis of those charges.

Many of the same adverse effects that attend the filing of a detainer are also presented by the existence of untried charges even in the absence of a detainer. Untried charges present difficulties to prison authorities and parole boards in formulating a prisoner's rehabilitative program, since such a program must be adopted without knowing whether the prisoner will be convicted on other charges. Pending charges also may adversely affect a prisoner's attitude towards rehabilitation, since the possibility of other convictions makes the prospect of release problematical no matter how zealously a prisoner might work to accomplish his own reform. Delay in going to trial and inability to prepare for trial while incarcerated are also effects that may be prejudicial to a prisoner subject to untried charges. *See United States v. Ford,* 550 F.2d 732, 737–40 (2d Cir.1977); *People v. Higinbotham,* 712 P.2d at 997–98. Although these concerns are expressly placed outside the purview of the IAD by its language requiring the filing of a detainer to trigger the statute's applicability, the Uniform Act contains no such limitation. We believe that the important policy considerations presented by untried charges with respect to facilitating the rehabilitation of prisoners give further reason to believe that the difference in the language of the Uniform Act and the IAD was purposeful, and that the Uniform Act was intended to have a broader scope in according prisoners a right to obtain disposition of untried charges than its interstate counterpart, the IAD.

The Uniform Act also provides that it "shall be so construed as to effectuate its

**6.** In *People v. Gonzales,* 679 P.2d 1085 (Colo. 1984), we recognized that the right of a prisoner to request final disposition of "any untried indictment, information, or criminal complaint" under § 16–14–102(1) of the Uniform Act does not encompass a right to request final disposition of matters on the basis of which an arrest warrant has been issued but no indictment, information, or criminal complaint has been filed.

general purpose to make uniform the laws of those states which enact it." § 16–14–108. The Uniform Act has been adopted by eight states. *See* Unif. Mandatory Disposition of Detainers Act, 11 U.L.A. 196 (1987 Supp.). Although few reported decisions involve the issue of the statute's applicability in the absence of the filing of a detainer, cases that address the adequacy of a prisoner's request for final disposition of charges do not inquire into whether a detainer was filed. Those decisions, therefore, do not treat such a filing as a prerequisite to a prisoner's right to request disposition of untried charges. *See People v. Hughes,* 38 Cal.App.3d 670, 113 Cal.Rptr. 508 (1974) (the court's failure to grant defendant's motion to dismiss the information on speedy trial grounds was found to be a violation of Cal.Penal Code § 1381 (West 1982), which is California's statute pertaining to the disposition of untried charges pending within the state and after which the Uniform Act was patterned); *State v. Turley,* 442 S.W.2d 75 (Mo.1969); *State v. Kania,* 341 N.W.2d 361 (N.D.1983); *State v. Moore,* 521 P.2d 556 (Utah 1974). *Cf.* Yackle, *Taking Stock of Detainer Statutes,* 8 Loy.L.A.L.Rev. 88, 111–13 (1975) (both the Uniform Act and the Interstate Agreement on Detainers seek to alleviate administrative difficulties relating to untried charges, but only the Interstate Agreement expressly limits its own application to cases in which a detainer has been filed); Note, *Convicts—The Right to a Speedy Trial and the New Detainer Statutes,* 18 Rutgers L.Rev. 828, 859–60 (1964) (a detainer is not a condition precedent to a prisoner's right under Uniform Act to request disposition of untried charges).

We acknowledge that in *People v. Bolin* we stated that the superintendent had no obligation under section 16–14–103 of the Uniform Act to forward a prisoner's request for final disposition of charges because a detainer was never filed. 712 P.2d at 1004. We said that "[t]he purpose of the Uniform Act is to provide a mechanism for the disposition of detainers; without a detainer, the act has no applicability." *Id.* The principal ground for our decision in *Bolin,* however, was that the superintend-ent had no duty to inform the prisoner under section 16–14–102(2) of the Uniform Act because a detainer was never filed. We adhere to that ground of decision today. We believe, however, that we were mistaken in stating broadly that the Uniform Act has no applicability in the absence of the filing of a detainer. To the extent that *Bolin* holds and other previous cases suggest that in the absence of a detainer, a prisoner in the custody of the department of corrections cannot request final disposition of an untried indictment, information or criminal complaint pending against him in Colorado under section 16–14–102, we repudiate that holding and those suggestions.

### III.

We next address the question of whether the defendant was "in the custody of the department of corrections" under sentence so as to be entitled under section 16–14–102 to request final disposition of the Larimer County charges when he made such request by his July 19, 1984, letter and for any required period thereafter.

The Uniform Act relates to persons "in the custody of the department of corrections" pursuant to sentence. § 16–14–102. It is only to persons so confined that section 16–14–102 gives the right to request final disposition of pending charges.

The defendant was in the El Paso County jail for the entire period relevant to this issue except for the time from June 19, 1984, to July 23 or 24, 1984, during which he was in a department of corrections facility commencing the service of his sentence based upon a later-vacated conviction in El Paso County. The People contend that since the defendant was not in a department of corrections facility for a full ninety day period after he requested final disposition of the Larimer County charges on July 19, 1984, his rights under section 16–14–104 to trial within ninety days of receipt of his request by the court and prosecuting official were not violated. We need not pause to consider whether the fact that the defendant was in a department of corrections facility on the day he made his demand is

independently sufficient to invoke the protection of the Uniform Act, for we conclude that even when in county jail he was in the custody of the department of corrections within the meaning of section 16–14–102.

We were presented with this same question in *People v. Mascarenas*, 666 P.2d 101 (Colo.1983). There, a defendant on parole for prior convictions was arrested in Weld County for crimes committed in that county. *Id.* at 104. While awaiting trial, he escaped and was charged with additional crimes committed in El Paso County. *Id.* He was subsequently arrested in the State of Washington and was extradited from that state and placed in the Jefferson County jail. *Id.* at 105. There, detainers were lodged against him by the sheriffs of both El Paso and Weld Counties, jurisdictions in which charges were pending that provided the bases for the extradition. *Id.* Defendant Mascarenas invoked his rights under the Uniform Act to request prompt disposition of the charges. *Id.* We specifically considered whether the defendant was in the custody of the department of corrections for the purpose of the Uniform Act under these circumstances and stated:

> The defendant was in the legal custody of the department of corrections at the time his requests were made. Mascarenas was on parole for prior convictions when he was arrested in Weld County. Parole was revoked after the Weld County charge was filed. We have held that a person placed on parole remains in the legal custody of the department of corrections for the term of his sentence.... The defendant was therefore in custody for purposes of the [Uniform] Act and was entitled to invoke its protections.

*Id.* at 106 (citations omitted).

The People argue, however, that our holding in *Mascarenas* that a person placed on parole remains in the legal custody of the department of corrections is limited to circumstances in which, as in *Mascarenas*, parole has been revoked. *See People v.*

*Ybarra*, 652 P.2d 182 (Colo.App.1982). The People contend that since the defendant's parole was not revoked in the present case until May 16, 1985, he was not in the custody of the department of corrections until that time, and the trial court erred in dismissing the information because the remainder of the ninety day period[7] had not run from the revocation of parole to the dismissal of the charges on June 17, 1985. We cannot accept this argument.

The holding in *Mascarenas* that the department of corrections maintains legal custody over a parolee is not limited to circumstances in which parole has been revoked. Inherent in the status of a parolee is that such a person is not in the physical custody of the department of corrections. Although not in its physical custody, a parolee remains in the legal custody of that department. § 17–2–207(3), 8A C.R.S. (1986). He is monitored by an officer of the department and must report periodically to the officer. His freedom, while significantly greater than that experienced while in the physical custody of the department of corrections, remains limited. For these reasons, we decline to read *Mascarenas* to confine the circumstances in which a parolee will be regarded as being in the custody of the department of corrections for the purposes of the Uniform Act to those circumstances in which parole has been revoked. To the extent that *People v. Ybarra*, 652 P.2d 182 (Colo.App.1982), holds to the contrary, it has no vitality after *Mascarenas*.

## IV.

The People contend that neither the defendant's July 14, 1983, letter nor his July 19, 1984, letter was sufficient to trigger the Uniform Act's ninety-day speedy trial period. We agree as to the 1983 letter but conclude that the 1984 letter met the requirements of the Uniform Act.

---

7. One day may have run on the ninety day period, as computed in the manner advocated by the People, immediately after the court and the district attorney received the defendant's July 19, 1984, letter on July 23, 1984, for the record does not establish whether the date on which the defendant was returned to the El Paso County jail from the department of corrections facility was July 23 or July 24.

## A.

■ The July 14, 1983, letter makes no mention of the Uniform Act by name or statutory citation. It simply makes a "demand for trial" and for a "speedy trial." These general requests are at least equally consistent with a demand for speedy trial under section 18–1–405(1), 8B C.R.S. (1986), as with an effort to invoke rights under the Uniform Act. *See also* Colo. Const. art. II, § 16; Crim.P. 48(b). We conclude that the letter was too indefinite to constitute a request for disposition of the defendant's untried Larimer County information under the Uniform Act.

## B.

■ The July 19, 1984, letter clearly constituted a request for disposition of charges under the Uniform Act. The letter was couched in terms of a motion to dismiss for failure to have complied with the "UNIFORM MANDATORY DISPOSITION OF DETAINERS ACT, found in Article 14 of the Colorado Revised Statutes." The letter sufficiently identified the Act to constitute a request, and the trial court properly treated the letter as an effort by the defendant to invoke his right to prompt final disposition of the Larimer County charges under the Uniform Act.

We also must determine whether the letter satisfied the requirements of the Uniform Act in order to entitle the defendant to relief in this case. Section 16–14–102 prescribes the form and content of such a request as follows:

> The request shall be in writing addressed to the court in which the indictment, information, or criminal complaint is pending and to the prosecuting official charged with the duty of prosecuting it and shall set forth the place of confinement.

In considering the adequacy of the July 19, 1984, letter, we must be guided by our decision in *People v. Mascarenas* wherein we held that "[w]here a prisoner has substantially complied with the provisions of the [Uniform] Act *and* the prosecution has actual notice of the prisoner's request" the prisoner has sufficiently complied with the

provisions of the Uniform Act. 666 P.2d at 106 (emphasis in original).

The People contend that the defendant did not satisfy the requirement that the request be addressed to the court in which the indictment, information, or criminal complaint is pending because the defendant's July 19, 1984, letter was sent to the chief judge of the Larimer County District Court rather than to the court itself. The purpose of the requirement that the request be addressed to the court is to ensure that the appropriate court receive notice that the prisoner intends to invoke his rights under the Uniform Act. The court received that notice. We hold that addressing the request for disposition under the act to the chief judge of the appropriate court constitutes substantial compliance within the requirement that the defendant give the court notice that he wishes to invoke the provisions of the act. *See People v. Mascarenas*, 666 P.2d at 106.

■ The People also contend that the defendant did not properly request disposition of the Larimer County charges because he failed to send notice of his request to the prosecuting official charged with the duty of prosecuting the information. We disagree. Although the defendant did not mail a copy of his request to the district attorney's office, the court provided the prosecutor with actual notice of the defendant's letter by mailing a copy to his office. The district attorney received the July 19, 1984, letter on July 23. This fulfilled the statutory purpose of giving notice to the prosecuting official and substantially complied with that requirement of the Uniform Act. *See People v. Mascarenas*, 666 P.2d at 106.

■ Finally, the defendant's request must set forth the place of confinement. The July 19, 1984, letter specified that the defendant had been held in the El Paso County jail from September 9, 1982, to June 19, 1984, at which time he was transferred to the department of corrections to serve a life sentence. This fully satisfied the requirement of description of the place of confinement.

We conclude that the defendant's July 19, 1984, letter was a valid request under the Uniform Act.

## V.

■ The People also assert that the defendant's request was defective because it was not delivered to the superintendent and forwarded to the court and the district attorney with an accompanying certificate under section 16–14–103. Section 16–14–103, 8A C.R.S. (1986), provides:

(1) Any request made pursuant to section 16–14–102 shall be delivered to the superintendent where the prisoner is confined who shall forthwith:

(a) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state board of parole relating to the prisoner; and

(b) Send, by registered mail, a copy of the request made by the prisoner and a copy of the information certified under paragraph (a) of this subsection (1) to both the court having jurisdiction of the untried offense and to the prosecuting official charged with the duty of prosecuting the offense.

The defendant admittedly did not follow these procedures. This same defect existed in *Mascarenas*. There we held that failure to meet the requirements of section 16–14–103 did not defeat substantial compliance with the Uniform Act when the prosecution had actual notice of the request and did not act on it. The same situation exists in the present case. *Mascarenas* is dispositive of the People's argument.

## VI.

The People argue in the alternative that if the defendant did invoke the requirement of the Uniform Act that he be brought to trial within ninety days of receipt of his request by the court and the prosecuting official, he acquiesced to delays through his various motions to substitute counsel during the period from December 19, 1984, to May 9, 1985. We disagree.

At the time the defendant was arraigned on December 19, 1984, almost six months had expired since the defendant's July 19, 1984, request. The record contains no indication that the defendant waived his right to dismissal because of violation of the matured ninety day requirement under the Uniform Act in the ensuing months until the court dismissed the information on June 17, 1985.

We conclude that the trial court correctly dismissed the charges against the defendant for violation of his ninety day trial right under section 16–14–104, 8A C.R.S. (1986). Judgment affirmed.

ROVIRA, J., dissents, and MULLARKEY, J., joins in the dissent.

ROVIRA, Justice, dissenting:

I respectfully dissent. The majority holds today that a prisoner may invoke the speedy trial demand provisions of the Uniform Mandatory Disposition of Detainers Act, § 16–14–101 to –108, 8A C.R.S. (1986) (the "Act"), absent the filing of a detainer with his custodian. Because I can find no support for such a broad reading either in the history of the Act, or in the demand provision's place in the statutory scheme, or in our recently decided cases, I respectfully dissent.

## I.

The court's duty in answering the question before us today is to construe the Act in the manner best giving effect to the legislature's intent in enacting the law. *People v. District Court*, 713 P.2d 918, 921 (Colo.1986); *People v. Mascarenas*, 706 P.2d 404, 406 (Colo.1985). We should be guided in this endeavor by looking to the problems the legislature addressed, *Schubert v. People*, 698 P.2d 788, 793–94 (Colo. 1985). Finally, our construction of a particular section of the Act should reflect its place in the scheme of the whole statute. *Humana, Inc. v. Board of Adjustment of City of Lakewood*, 189 Colo. 79, 82, 537 P.2d 741, 743 (1975); *People ex rel. Dun-*

bar v. Trinidad State Junior College, 184
Colo. 305, 309, 520 P.2d 736, 738 (1974).

What evidence there is of the history of
the Act indicates that it was intended solely
to provide a remedy for the widespread
abuse of detainers. The scope of the Act
may be determined in the first instance, of
course, by its restrictive title. *Conrad v.
City of Thornton,* 191 Colo. 444, 449, 553
P.2d 822, 826 (1976). In addition, when the
Act was proposed to the National Confer-
ence of Commissioners on Uniform State
Laws in 1958, the Committee of State Offi-
cials provided the following summary of
the law and its purpose:

It is proper that authorities in quest of a
violator of the law should have assist-
ance in returning him to their jurisdic-
tion, nevertheless *the detainer system
now operates to the detriment of socie-
ty all too often.*

A sentencing judge is at a loss when
faced with detainers already filed and
with the possibility of other detainers,
since the effect of the detainers on the
total correctional treatment of the of-
fender cannot be known in advance of
trial under them. The prison administra-
tor is hampered in his efforts toward
rehabilitation since the inmate with a de-
tainer filed against him may suffer from
anxiety concerning its effect and not re-
spond to training. In many jurisdictions,
he is not eligible for parole.

. . . .

. . . [The Act] provides that *a prisoner,
wishing to clear a detainer* based on an
outstanding indictment, information or
complaint, *may make a request for final
disposition of the charges against him.*
If trial on them is not had within a rea-
sonable time as defined in the statute,
the indictment, information or complaint
ceases to be of any further force or
effect, and the detainer based thereon is
removed with prejudice. *The Uniform
Act provides for dismissal of the de-
tainer with prejudice under the cir-
cumstances outlined above* and also
upon failure of the proper correctional
official to inform a prisoner within one
year after a detainer has been filed

against him at the institution. (Empha-
sis added.)

Committee of State Officials on Suggested
State Legislation, 19 Suggested State Leg-
islation, 167, 167–68 (1958).

The Committee considered a similar Cali-
fornia law, and the Commissioners, in
adopting the Act in 1958, explained that:

California has devised a method of ob-
taining prompt disposition of detainers
by providing that prosecuting officials,
upon the request of the prisoner, must
move forward with trial of the charge
which caused the detainer. Failing to do
so within a reasonable time automatically
brings about a dismissal of such charge
and withdrawal of the detainer. This
procedure is available to the prisoner
both with regard to detainers lodged at
the time imprisonment commences or
during the continuance of the term of
imprisonment. *In other words, a sort of
"statute of limitations" is applied to
detainers to the end that valid charges
will be ripened into trials whereas de-
tainers merely lodged on suspicion or
less will be dismissed.* Competent au-
thorities estimate that as many as 50% of
warrants now lodged against prisoners
are never intended to be prosecuted.
(Emphasis added.)

Commissioners' Prefatory Note, Uniform
Mandatory Disposition of Detainers Act, 11
U.L.A. 321, 322 (1974).

The California law to which the Commis-
sioners' notes referred actually applies to
any case in which a prisoner is charged
with a crime, and not just to those cases in
which a detainer is filed. *See* Cal.Penal
Code § 1381 (West 1986). The Commis-
sioners' use of that law as an example of
how abuses of detainers are prevented fur-
ther indicates the narrow application of the
Act.

Our previous decisions have recognized
the limited scope of the Act. In *People v.
Higinbotham,* 712 P.2d 993 (Colo.1986), for
example, we stated that "[u]nder the Uni-
form Act, a prisoner may request final
disposition of any untried charges pending
against him in Colorado *on the basis of
which a detainer has been lodged."* 712

P.2d at 995 (emphasis added). Moreover, we have consistently rejected the claim that the Act was intended to apply to situations in which no detainer is filed against the prisoner. *See People v. Bolin,* 712 P.2d 1002, 1004 (Colo.1986) ("The purpose of the Uniform Act is to provide a mechanism for the disposition of detainers; without a detainer, the act has no applicability"); *People v. Yellen,* 704 P.2d 306, 311–12 (Colo.), *cert. denied,* 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 582 (1985).

## II.

In light of the Act's clear focus on protecting prisoners from abusive detainers, I am unpersuaded by the majority's rationale for expanding that protection to include cases in which no detainer is filed.

First, the majority contends that the statute is clear in excluding a detainer requirement from the speedy trial demand provisions. While it is true that section 16–14–102(1), 8A C.R.S. (1986), does not specifically mention "detainer," we have had no trouble finding, without dissent, that the statutory scheme contemplates the filing of a detainer as a prerequisite to the superintendent's duties under section 16–14–102(2), despite that section's failure to use the word "detainer." *See People v. Bolin,* 712 P.2d at 1004; *People v. Yellen,* 704 P.2d at 312.

The majority attempts to distinguish *Yellen* and *Bolin* on the grounds that those cases addressed only the duties of the superintendent under sections 16–14–102(2) & (3) of the Act. I do not believe that *Yellen* and *Bolin* may so easily be discounted. While those cases dealt with a different section of the Act from that we consider today, we were careful in both cases to investigate and to apply the general scheme of the Act in reaching our decisions. Just as we found that, when read as a whole, the Act on its face requires a detainer to trigger the superintendent's duties, I read those duties as indicative of the legislature's focus on detainers. The superintendent's notification duties are clearly intended to facilitate a prisoner's demand rights. Because the superintend-

ent is required to notify a prisoner of pending charges only when a detainer is filed, it seems equally clear that the legislature only intended a prisoner to be given the right to demand disposition of charges underlying a detainer.

Second, the majority acknowledges the line of cases in which we have held that the purpose of the Act is "to permit a prisoner to clear up detainers that have been lodged against him," and thereby be protected from such adverse effects of detainers as loss of or ineligibility to receive "trusty" status, restrictions on parole, and detention in maximum security cells.

The majority also finds that one of the purposes of the Act is better satisfied by finding that it covers cases in which no detainer is filed. The heart of that argument is the observation that:

Many of the same adverse effects that attend the filing of a detainer are also presented by the existence of untried charges even in the absence of a detainer. Untried charges present difficulties to prison authorities and parole boards in formulating a prisoner's rehabilitative program, since such a program must be adopted without knowing whether the prisoner will be convicted on other charges. Pending charges also may adversely affect a prisoner's attitude towards rehabilitation, since the possibility of other convictions makes the prospect of release problematical no matter how zealously a prisoner might work to accomplish his own reform.

Maj. op. at 307.

The majority finds therein reason for believing that the Act's exclusion of an express requirement that the prisoner have a detainer against him (unlike the IAD, which expressly conditions the demand provisions on the existence of a detainer) was purposeful. The Committee of State Officials, however, recited exactly those rehabilitation factors while at the same time addressing only detainers. Whether the legislature had reason to extend the protection beyond cases in which a detainer is filed is insufficient evidence of their intent to do so.

The thrust of the majority opinion lies in its conclusion that if the prisoner has knowledge of untried charges against him, he has a right to demand the speedy disposition of those charges even if no detainer is filed. Implicit in this conclusion is that the custodian of the prisoner need not be aware of those charges. If this be the case then the rationale behind the Act disappears, for it is only the custodian's knowledge of the untried charges, as evidenced by a detainer being filed, which may trigger the adverse consequences of ineligibility for rehabilitation programs, maximum security detention, and delayed parole release.

It cannot be disputed that the Act arose out of widespread concern that the detainer system had become the subject of widespread abuse and that prisoners were entitled to some protection. However, to read the Act as the majority does transforms it into a special speedy trial law for prisoners. I cannot find any evidence that the legislature thought that prisoners needed additional protection, except in those cases in which detainers are filed with their custodians.

I would reverse the judgment of the district court.

I am authorized to say that Justice MULLARKEY joins me in the dissent.